J-S13001-21

2021 PA Super 207

| | | |
|---|---|---|
| MIA GRAVES,[1] APPELLANT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DARLENA GRAVES | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1787 EDA 2020 |

Appeal from the Order Entered September 10, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): No. XC0804474

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.[*]

OPINION BY OLSON, J.: **FILED OCTOBER 18, 2021**

Appellant, Mia Graves (hereinafter "Mother"), appeals *pro se* from the

order entered on September 10, 2020, granting Eugene Watson (hereinafter

_____

[1] We use the parties' names in the caption "as they stood upon the record of the trial court at the time the appeal was taken" pursuant to Pa.R.A.P. 904(b). We note that recent changes to our Rules of Appellate Procedure provide that "[i]n an appeal of a custody action where the trial court has used the full name of the parties in the caption, upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child." Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907 ("When an appeal is filed in a custody action, upon application of a party and for cause shown the appellate court may make a determination that using the parties' initials in the caption is appropriate after considering the sensitive nature of the facts included in the case record and the child's best interest."). These changes to our Rules were approved on October 22, 2020, effective January 1, 2021, after the current appeal was filed. Moreover, no party has applied to this Court for the use of initials in the caption. We will, however, refer to the minor involved in this custody dispute by his initials or as "the child" throughout our decision so as to protect his identity.

[*] Retired Senior Judge assigned to the Superior Court.

"Father") primary physical and sole legal custody of the parties' minor child, A.G. (a male born in January, 2008).[2]  Upon review, we vacate the order and remand for additional proceedings.

We briefly summarize the facts and procedural history of this case, as gleaned from the certified record, as follows.  Initially, and important to this decision, we note that Mother and Maternal Grandmother live in Philadelphia, Pennsylvania.  Father lives in Middletown, Delaware.  In its opinion, the trial court "takes notice of the proximity of Middletown, Delaware and Philadelphia, Pennsylvania is about sixty (60) miles apart."   Trial Court Opinion, 12/16/2020, at 12.  There is no dispute that child has always lived with Mother in Philadelphia.  *See* N.T., 9/10/2020, at 34 (Maternal Grandmother testified that Father has never cared for the child or taken him to school or medical appointments); *id.* at 63-66 (Father testified that the child lived with Mother in Pennsylvania for his entire life, Father never cared for the child or filed for custody, and Father did not know the child's doctors or teachers).   According to Mother, Father has seen the child "two times in life."   N.T., 3/4/2020, at 12-14 and 16.   There is no custody agreement between Mother and Father. *Id.* at 5 ("[Father] and [M]other have never gotten along to even come to some type of agreement with [the child.]").   There was a temporary custody

_____

[2] As will be discussed, this matter came before the trial court when A.G.'s maternal grandmother, Darlena Graves (hereinafter "Maternal Grandmother"), the other party captioned in this appeal, filed a petition for custody.  Neither Maternal Grandmother nor Father has filed an appellate brief with this Court.

order entered on October 20, 2009, granting Mother custody of the child, "without prejudice to Father who was facing criminal charges at the time."[3] Trial Court Opinion, 12/16/2020, at 2. There was no final custody order entered in this matter. N.T., 3/4/2020, at 5-6.

On April 29, 2019, Maternal Grandmother filed a complaint seeking primary physical and shared legal custody of the child. Maternal Grandmother's complaint named Mother and Father as defendants. On May 13, 2019, Mother filed a complaint for sole physical and legal custody of the child. Mother named Maternal Grandmother as the sole defendant. Father did not file a petition for custody and the trial court did not join him as a necessary party to the complaints filed by Mother and/or Maternal Grandmother. A hearing was held on March 4, 2019, wherein Maternal Grandmother, Father, and Mother were present and testified.[4] The parties

_____

[3] In its opinion, the trial court asserts that this was Mother's third complaint for custody. It states that Mother filed custody complaints on January 11, 2008 and January 14, 2009 which were ultimately dismissed for lack of prosecution when Mother failed to appear for hearings. *See* Trial Court Opinion, 12/16/2020, at 2. However, it states "[o]n October 20, 2009, a temporary order was entered [] without prejudice to Father who was facing criminal charges at the time." *Id.* Upon review, the prior complaints and temporary order are not in the certified record. As such, we are unable to discern which of the seven delineated types of custody under 23 Pa.C.S.A. § 5323(a), as set forth below, was awarded to Mother. This omission, however, does not affect our overall review or disposition in this matter.

[4] From our review of the notes of testimony from the March 2019 proceeding, the child was still living with Mother at the time of the March 2019 hearing.

- 3 -

could not agree on a plan for custody and, without resolution, the matter was scheduled before the trial court.

On September 10, 2020, the trial court held a virtual hearing. Mother and Maternal Grandmother, both represented by counsel, testified. Father appeared *pro se* and testified. At the beginning of the September 2020 hearing, counsel for Maternal Grandmother informed the trial court that the child was no longer living with Mother and, instead, was residing with Father in Delaware. "As a result, [M]aternal [G]randmother [] chang[ed] her request for primary physical custody to visitation[.]" N.T., 9/10/2020, at 7. More specifically, counsel for Maternal Grandmother asserted:

> since the last court date, there was a change in circumstances in which the child has run away twice. On the second occasion in which he ran away, he met [] [M]aternal [G]randmother [] in a park, where she recovered him and contacted [] [F]ather. The child is currently in the care of [F]ather, in which [Maternal] [G]randmother believes the child is safe and doing well, and it's her position that she would like to just have visitation at this time, because her essential concern was the safety of the child.

*Id.* at 12-13. Counsel for Mother responded:

> [T]his is a case where [] [M]aternal [G]randmother has continuously undermined the relationship with [] [M]other and the child. The child has severe medical issues and needs to be monitored, needs to have medication.
>
> And there will be testimony that [Maternal] [G]randmother has been reaching out to the child *via* Instagram and coached the child to leave the home and go to a park, and [Maternal] [G]randmother picked the child up and took the child out of state, to Delaware, where [] [F]ather resides.
>
> [F]ather is not appropriate. He has an extensive criminal background. There's allegations of him having drug use, and he is

- 4 -

not an appropriate parent. He has never filed [for] any type of custody for the child.

And, even today, with this pending hearing, he has not filed for custody. So, it's our position that the child should be returned to [] [M]other.

*Id.* at 14. At the time of the September 2020 hearing, "[M]other ha[d] not seen the child in 45 days[.]" *Id.* at 100.

Following the hearing, on September 10, 2020, the trial court entered an order granting Father sole physical and legal custody of A.G. The order also granted Mother partial, supervised physical custody of the child every second, third, and fourth weekend of every month "with a person agreed to by opposing counsel."[5] Order, 9/10/2020, at 1 (complete capitalization omitted). The order further granted Maternal Grandmother "visitation as mutually arranged and agreed between Maternal Grandmother, Father and minor child[.]" *Id.* (complete capitalization omitted). On September 15, 2020, Mother, acting *pro se*, filed a petition for reconsideration, a motion for recusal, and a motion to proceed *in forma pauperis*.[6] On October 1, 2020, the trial court granted Mother's motion to proceed *in forma pauperis*. Following a hearing, the trial court denied Mother's requests for recusal and

---

[5] When read in context, the term "opposing counsel" appears to refer to the attorney representing Maternal Grandmother.

[6] In her *in forma pauperis* motion, Mother also requested the transcripts from the proceedings on March 4, 2020 and September 10, 2020.

reconsideration by order entered on October 29, 2020. This timely appeal resulted.[7]

On appeal *pro se*,[8] Mother contends that the trial court erred by awarding Father custody since he did not file a petition for custody and the child has never been in Father's care. Mother's Brief at 2. Mother also claims that the trial court failed to consider all 16 factors pertaining to an award of custody as set forth in 23 Pa.C.S.A. § 5328. *Id.* at 6-8. Lastly, Mother argues that the trial court erred in granting custody to Father because the 60-mile distance between her home and his "is a barrier for" her. *Id.* at 3.

Our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type
> and our standard is abuse of discretion. We must accept findings
> of the trial court that are supported by competent evidence of
> record, as our role does not include making independent factual

---

[7] On September 21, 2020, Mother filed a timely *pro se* notice of appeal. She filed a *pro se* concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2) on October 25, 2020. Although Mother did not contemporaneously file her Rule 1925 statement with her notice of appeal as required, there is no prejudice to the parties. *See In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009) (declining to quash or dismiss a family fast track appeal for filing a defective notice of appeal under Pa.R.A.P. 1925(a)(2) when there is no prejudice to the parties). Moreover, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 16, 2020, addressing the issues presented in Mother's Rule 1925(a)(2) statement.

[8] To say the least, Mother's appellate brief is not a model of clarity, as she devotes a substantial amount of attention to arguing the factual disputes between the parties. Moreover, we also recognize that a *pro se* appellant is not entitled to special treatment. Nevertheless, we are able to discern the legal issues presented by Mother and our review is not hampered by her filing. In addition, Mother was represented by counsel in the custody proceeding and counsel advanced several of the arguments that Mother raises currently.

determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*D.K. v. S.P.K.*, 102 A.3d 467, 478 (Pa. Super. 2014) (citation omitted). "The standard of review of a visitation order is the same as that for a custody order." *T.B. v. L.R.M*., 874 A.2d 34, 37 (Pa. Super. 2005) (citation omitted).

Here, Mother first contends that the trial court erred by awarding custody of a child to a non-custodial party that did not file a petition formally seeking custody. On this issue, the trial court, without any citation to legal authority, opined:

> [S]imply because Father did not file a complaint, it does not create the presumption that he is an unfit parent. Once a complaint is filed, the door is opened for both sides to voice their reasons for primary physical custody and legal custody. Both sides are given the chance to explain why it is in the best interest of the child to reside with them.

Trial Court Opinion, 12/16,2020, at 10; *see also* N.T., 9/10/2020, at 84-85 (on-the-record discussion between trial court and court clerk). However, Pennsylvania Rule of Civil Procedure 1915.6 governs the joinder of parties in custody actions and provides:

> (a)(1) If the court learns from the pleadings or any other source that a parent whose parental rights have not been previously terminated or a person who has physical custody of the child is not a party to the action, it **shall** order that the person be joined as a party. Such person shall be served with a copy of all prior

- 7 -

pleadings and notice of the joinder substantially in the form prescribed by Rule 1915.16(a).

(2) The person joined must file any objection to the order of joinder within twenty days after notice of the order.

(3) The person joined may file a counterclaim asserting a right to physical or legal custody in the form required for a complaint by Rule 1915.3. A copy of the counterclaim shall be served upon all other parties to the action as provided by Rule 440.

(b) If the court learns from the pleadings or any other source that any other person who claims to have custodial rights with respect to the child is not a party to the action, it shall order that notice be given to that person of the pendency of the action and of the right to intervene therein. The notice shall be substantially in the form prescribed by Rule 1915.16(b).

Pa.R.C.P. 1915.6 (emphasis added). Thus, while we agree with the trial court that failure to file a complaint does not create the presumption that Father is unfit, the trial court needed to first join Father as a necessary party to this custody action and, if Father sought custody, he needed to file a counterclaim asserting that right. As such, the trial court erred as a matter of law by granting Father custody without first following the dictates of Rule 1915.6.

Additionally, child custody is governed by 23 Pa.C.S.A. §§ 5321-5340. A "court may award any of" seven delineated "types of custody if it is in the best interest of the child" after "considering the factors set forth in [S]ection 5328 (relating to factors to consider when awarding custody)[.]" 23 Pa.C.S.A. § 5323(a). "Any custody order shall include notice of a party's obligations under [S]ection 5337 (relating to relocation)." 23 Pa.C.S.A. § 5323(c). "The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Parents and

- 8 -

grandparents have standing and "may file an action under [the custody statute] for any form of physical custody or legal custody."[9]  23 Pa.C.S.A. § 5324.  "In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent."  23 Pa.C.S.A. § 5327(a).  "In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent.  The presumption in favor of the parent may be rebutted by clear and convincing evidence."  23 Pa.C.S.A. § 5327(b).

Section 5328, provides the factors for a trial court to consider when awarding custody:

> **(a) Factors**.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

---

[9]  The standing provision only addresses **who** may file a petition.  In this case, there is no dispute that Mother, Father and Maternal Grandmother each had standing to file a petition for custody.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

**(b) Gender neutral**.--In making a determination under subsection (a), no party shall receive preference based upon gender in any award granted under this chapter.

**(c) Grandparents and great-grandparents**.--

(1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

(2) In ordering partial physical custody or supervised physical custody to a parent's parent or grandparent who has standing under section 5325(3), the court shall consider whether the award:

(i) interferes with any parent-child relationship; and

(ii) is in the best interest of the child.

23 Pa.C.S.A. § 5328.

Regarding relocation, the Section 5337 provides, in pertinent part:

**(b) General rule**.--No relocation shall occur unless:

(1) every individual who has custody rights to the child consents to the proposed relocation; or

(2) the court approves the proposed relocation.

**(c) Notice**.--

(1) The party proposing the relocation shall notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given[.]

\*          \*          \*

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

(i) The address of the intended new residence.

(ii) The mailing address, if not the same as the address of the intended new residence.

(iii) Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

(iv) The home telephone number of the intended new residence, if available.

(v) The name of the new school district and school.

(vi) The date of the proposed relocation.

(vii) The reasons for the proposed relocation.

(viii) A proposal for a revised custody schedule.

(ix) Any other information which the party proposing the relocation deems appropriate.

(x) A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

(xi) A warning to the nonrelocating party that if the nonrelocating party does not file with the court an objection to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.

(4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

**(d) Objection to proposed relocation**.--

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a

temporary or permanent order to prevent the relocation. The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not. If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and returning to the court a counter-affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities)[.]

*         *         *

**(g) Hearing**.--

(1) Except as set forth in paragraph (3), the court shall hold an expedited full hearing on the proposed relocation after a timely objection has been filed and before the relocation occurs.

(2) Except as set forth in paragraph (3), the court may, on its own motion, hold an expedited full hearing on the proposed relocation before the relocation occurs.

(3) Notwithstanding paragraphs (1) and (2), if the court finds that exigent circumstances exist, the court may approve the relocation pending an expedited full hearing.

(4) If the court approves the proposed relocation, it shall:

(i) modify any existing custody order; or

(ii) establish the terms and conditions of a custody order.

**(h) Relocation factors**.--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

**(i) Burden of proof**.--

(1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).

(2) Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

**(j) Failure to provide reasonable notice**.--The court may consider a failure to provide reasonable notice of a proposed relocation as:

> (1) a factor in making a determination regarding the relocation;
>
> (2) a factor in determining whether custody rights should be modified;
>
> (3) a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;
>
> (4) sufficient cause to order the party proposing the relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and
>
> (5) a ground for contempt and the imposition of sanctions against the party proposing the relocation.

**(k) Mitigation**.--Any consideration of a failure to provide reasonable notice under subsection (i) shall be subject to mitigation if the court determines that such failure was caused in whole, or in part, by abuse.

**(l) Effect of relocation prior to hearing**.--If a party relocates with the child prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation.

23 Pa.C.S.A. § 5337.

"It is well-established in Pennsylvania that custody and visitation matters are to be decided on the basis of the judicially determined 'best interests of the child' standard, on a case-by-case basis, considering **all** factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Id.* at 38 (citation omitted) (emphasis in original). We have previously determined:

> Pennsylvania law makes clear that a 'best interest' analysis in any custody dispute should include a number of important factors,

such as parenthood; the length of time the child has been separated from **the party seeking custody**; the adverse effect on the child caused by disruption of an established relationship; and the fitness of **the party seeking custody**.

\*          \*          \*

[A] full inquiry is essential to determine what serves a child's best interest; all pertinent facts surrounding **the contesting parties** must be fully explored and developed.  The paramount focus is the best interest of the child involved, not the respective rights of **the contesting parties**.  Factors having a significant effect on the child's well[-]being can justify a custody finding in favor of a third party, even if the evidence does not show that the biological parent is unfit.

**T.B. v. L.R.M.**, 753 A.2d 873, 889-890 (Pa. Super. 2000) (*en banc*) (internal citations omitted) (emphasis added).

"In a dispute between parents, each parent shares the burden of proving, by a preponderance of the evidence, that an award of custody to him or her would serve the best interests of the child." **Porch v. Porch**, 475 A.2d 831, 832 (Pa. Super. 1984) (citation omitted).  In a case "in which a third party challenges the grant of custody to a parent, the third party bears the burden of proof and persuasion that convincing reasons exist such that an award of custody to the third party is in the child's best interest." **Jordan v. Jackson**, 876 A.2d 443, 450 (Pa. Super. 2005).  We have previously determined that a biological parent may not seek custody on behalf of a third-party.  **See Palmer v. Tokarek**, 421 A.2d 289, 293 (Pa. Super. 1980) ("To permit such a distinction would, in effect, give the third-party equal status with a natural parent as long as the parent not seeking custody prefers that the child remain with the third party. Such a result would be inconsistent with

- 16 -

the court's overriding concern for the best interests of the child and the recognized rights of natural parents to custody.").

Here, Mother and Maternal Grandmother filed complaints and specifically requested custody; Father did not. At the September 10, 2020 proceeding, the trial court, as well as counsel for both Mother and Maternal Grandmother, acknowledged that Father never filed a petition seeking custody.[10] As the caption of this case suggests, the custody dispute squarely

_____

[10] At the beginning of the September 2020 proceeding, as mentioned previously, counsel for Mother argued:

> The father is not appropriate. He has an extensive criminal background. There's allegations of him having drug use, and he is not an appropriate parent. He has never filed any type of custody for the child.
>
> And, even today, with this pending hearing he has not filed for custody. So, it's our position that the child should be returned to the mother[.]

N.T., 9/10/2020, at 14.

Counsel for Maternal Grandmother first acknowledged that there was no prior custody determination between Mother and Father and then stated:

> [I]f there's a custody dispute between the mother and father, I believe both parents will simultaneously have to file a petition with the [c]ourt, and the [c]ourt will address that accordingly.

*Id.* at 15.

Later in the proceeding, when counsel for both Maternal Grandmother and Mother questioned Father about why he did not file a petition for custody, the trial court stated "the father did not believe he had to file for custody. Sir, **as**
*(Footnote Continued Next Page)*

- 17 -

before the trial court was solely between Mother and Maternal Grandmother. Here, the trial court granted sole physical and legal custody to Father, even though Father never joined the litigation as a party, never petitioned the trial court for custody, and the child never lived with Father prior to the commencement of these custody proceedings. Pennsylvania Rule of Civil Procedure 1915.6(a) clearly required Father's joinder in this case as "a parent whose parental rights have not been previously terminated[.]" Pa.R.C.P.

---

**a matter of law**, **you do have to file for custody**." *Id.* at 67 (emphasis added).

Ultimately, the following exchange occurred:

> THE COURT: No, I -- I believe, after listening extensively to testimony for the past couple of hours, that the child, the [F]ather and the [M]aternal [G]randmother have created a preponderance of the evidence for the mother not having custody.
>
> A preponderance of the evidence is the legal standard that we have here. The [M]aternal [G]randmother has said that she would really rather the [F]ather have primary custody of the child. I assume that's okay with the [F]ather if he has primary custody, sir? [Father], is that okay with you if you have primary custody?
>
> [FATHER]: Yes, it is, absolutely.
>
> THE COURT: Okay. And, so, I'm going to award the [F]ather primary custody of the child, as the child wishes, as the [M]aternal [G]randmother wishes.
>
> [Counsel for Mother]: And, Your Honor -- and your basis for awarding father primary physical custody?
>
> THE COURT: Preponderance of the evidence that he is the person best equipped to be the father of the child.

*Id.* at 89-90.

- 18 -

1915.6(a). In turn, Father could elect to "file an objection to the order of joinder within twenty days" and/or "file a counterclaim asserting a right to physical or legal custody" with proper service to Mother and Maternal Grandmother. *See* Pa.R.C.P. 1915.6(a)(2) and (3). Moreover, if a parent cannot petition for custody on behalf of a third-party, a third-party cannot petition for custody on behalf of a parent. *See Palmer supra*. Thus, Maternal Grandmother's petition for custody was no substitute for the trial court's failure to join Father as a party to this action.[11] Upon review of the record, Mother was not given notice that Father sought custody or that Maternal Grandmother changed her request from primary custody to visitation.[12] For

_____

[11] Here, it does not appear that Maternal Grandmother requested custody on behalf of Father. In her petition, Maternal Grandmother sought custody and/or visitation in her own right. At the September 10, 2020 proceeding, however, counsel for Maternal Grandmother stated that because "the child [wa]s no longer in the custody of [M]other[,], maternal grandmother [wa]s actually changing her request for primary physical custody to visitation" only. N.T., 9/10/2020, at 7; *id.* at 10.

[12] This is highlighted by the fact that Mother complained, in her motion for reconsideration and Rule 1925 statement, that she was denied the right to present information to support her allegations that Father has a criminal record spanning several jurisdictions. The trial court opined:

> [Mother] contends that Father had a criminal history in Maryland, Delaware, and Virginia. A search of Father's criminal history exhibits a 2004 guilty plea to a drug related offense and a 2009 matter that was transferred to another jurisdiction. Father supplied information and told the court the allegations and the result. This matter was allegedly a domestic dispute in 2008 that was never pursued by [Mother] in that matter. In addition, Mother

*(Footnote Continued Next Page)*

all of the foregoing reasons, we find the trial court erred in failing to join Father as a party and in granting custody to Father in the absence of a counterclaim asserting that right.

Moreover, in this case, the trial court did not comply with the statutory mandates that it consider, and explain either on the record or in a written opinion under Section 5323(d), its reasons for granting custody and relocation of the child based upon the factors enumerated in Sections 5328 and 5337, as detailed above. "The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors." **M.J.M. v. M.L.G.**, 63

---

did not proffer or provide any supplemental information in support of [ ] Father's alleged criminal history in other states.

In preparation of its cases, [the trial court states it] always reviews the parties' criminal background and has a copy of Pennsylvania's criminal abstract. If there are concerns to any party's charges of the facts surrounding that charge, the court follows up with the litigant *sua sponte*. Here, Mother did not raise the issue of Father's criminal history from other states (Delaware, Virginia, Maryland) during the hearing and *now* raises it on appeal.

Trial Court Opinion, 12/16/2020, at 7 (emphasis in original). Because Mother had no notice that Father sought custody, she cannot be faulted for failing to raise the issue of Father's criminal history from other states at the hearing. "Where a party seeks any form of custody, the court shall consider whether that party or member of that party's household has been convicted of or has pleaded guilty or no contest to any of the offenses in this [S]ection or an offense in another jurisdiction substantially equivalent to any of the offenses in this [S]ection. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that party[.]" 23 Pa.C.S.A. §§ 5329.

A.3d 331, 336 (Pa. Super. 2013) (citations omitted). "[T]here is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *Id.*

Upon review of the record, the trial court did not specifically address the Section 5328 factors on the record in open court. Moreover, there was no evidence presented regarding Father's availability to care for the child or the ability to make appropriate child-care arrangements, Father's history of drug or alcohol abuse (or that of members of his household), or the mental and physical condition of Father (or members of his household).[13] Without information pertaining to these factors, the trial court could not have properly considered them. Moreover, in its written opinion, the trial court analyzes only factors 1, 2, 6, and 11 under Section 5328. Furthermore, in its written

---

[13] In fact, it is not entirely clear who is living at Father's residence. Father testified that he has a wife but did not specify she lives with him. N.T., 9/10/2020, at 72. Apparently, the child's "other siblings" live with Father, but Father did not provide additional information about them. *Id.* at 62. With such scant information, we conclude that the trial court could not have properly considered whether it was in the child's best interest to live with Father. Moreover, in its opinion, the trial court claims that Mother waived her allegation that there were sexual predators residing at Father's home because she never raised it at the September 10, 2020 hearing. Trial Court Opinion, 12/16/2020, at 8. The trial court states "[t]he fear of sexual predators among children is not taken lightly by [this] court and would have undoubtedly been at the forefront of the two-hour hearing if raised." *Id.* Again, without notice that Father sought custody, and without general information about the other people residing with Father, Mother could not adequately prepare to defend herself against claims raised by Father or investigate the possibility that sexual predators may reside with him.

opinion, the trial court states that "Mother did not provide specific factors under Pa.C.S.A. § 5328." Trial Court Opinion, 12/16/2020, at 10. However, Father was granted custody (despite his non-party status and not petitioning or filing a counterclaim pursuant to Rule 1915.6), and **he** did not provide evidence that the custody factors militated in his favor. Accordingly, we conclude the trial court failed to take into consideration **all** of the factors enumerated in Section 5328 as required and that Father did not meet his burden of proof that custody be granted to him based upon the best interests of the child.

Finally, with regard to relocation, the trial court merely examined Section 5328(a)(11) pertaining to the proximity of the parties and, as stated previously, took judicial notice that Mother and Father's residences were approximately 60 miles apart. **See** Trial Court Opinion, 12/16/2020, at 12. The trial court also opined that "a proper petition should be filed for relocation" and claimed it "did not intend to overstep any procedures relating to 23 Pa.C.S.A. § 5337." **Id.** at 13.

This Court previously stated:

> In a custody case where neither parent is relocating, but the children stand to move a significant distance, trial courts should still consider the relevant factors of [S]ection 5337(h) in their [S]ection 5328(a) best interests analysis. Several of the factors of [S]ection 5337(h) are encompassed, either directly or implicitly, by the custody factors of [S]ection 5328(a). Trial courts should also consider those relevant factors of [S]ection 5337(h) that are not otherwise encompassed directly or implicitly by the [S]ection 5328(a) factors pursuant to the catchall provision of [S]ection 5328(a)(16).

- 22 -

For example, the language in [S]ection 5337(h)(4), which requires a trial court to consider the child's preference, is nearly identical to the language in [S]ection 5328(a)(7). **_Compare_** 23 Pa.C.S.A. § 5337(h)(4), with 23 Pa.C.S.A. § 5328(a)(7) (requiring the trial court to consider "[t]he well-reasoned preference of the child, based on the child's maturity and judgment"). Likewise, [S]ection 5337(h)(9), which requires the trial court to consider "[t]he present and past abuse committed by a party or member of the party's household" is closely related to [S]ection 5328(a)(2). **_Compare_** 23 Pa.C.S.A. § 5337(h)(9), with 23 Pa.C.S.A. § 5328(a)(2) (mandating consideration of "[t]he present and past abuse committed by a party or member of the party's household"). Additionally, [S]ection 5337(h)(5), which requires the trial court to consider "[w]hether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party," is similar to [S]ection 5328(a)(8). **_Compare_** 23 Pa.C.S.A. § 5337(h)(5), with 23 Pa.C.S.A. § 5328(a)(8) (requiring the trial court to consider "the attempts of a parent to turn the child against the other parent"). Further, [S]ection 5337(h)(1), which requires the trial court to consider "[t]he nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life," encompasses subsections (3), (5), and (6) of [S]ection 5328(a), which require consideration of the parental duties performed by each party, 23 Pa.C.S.A. § 5328(a)(3), the availability of extended family, 23 Pa.C.S.A. § 5328(a)(5), and sibling relationships, 23 Pa.C.S.A. § 5328(a)(6). **_Compare_** 23 Pa.C.S.A. § 5337(h)(1), with Pa.C.S.A. § 5328(a)(3), (5), (6).

Additionally, in any custody determination where neither parent is moving, but the children stand to move to a significantly distant location, the trial court would still need to consider the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development (23 Pa.C.S.A. § 5337(h)(2)), the feasibility of preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3)), and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7)). Even though these three factors are not directly or implicitly encompassed in [S]ection 5328(a), they are clearly relevant to the decision of what is in the child's best interest when

contemplating a move of significant distance to the other parent's home, and are therefore necessarily part of the trial court's analysis pursuant to [S]ection 5328(a)(16), which requires a trial court to consider "any other relevant factor" in making a custody determination. 23 Pa.C.S.A. § 5328(a)(16).

In summary, based on the foregoing statutory authority and case law, we hold that a custody case where neither parent is seeking to relocate and only the children would be moving to a significantly distant location if custody shifted from one parent to another does not *per se* trigger [S]ection 5337 of the Child Custody Act. Thus, the notice requirement of [S]ection 5337(c) does not apply in such cases. **Trial courts should still consider the relevant factors of [S]ection 5337(h) in their [S]ection 5328(a) best interest analysis.** As we have explained, several of the relevant factors of [S]ection 5337(h) are encompassed, directly or implicitly, by the custody factors listed in [S]ection 5328(a). Any relevant [S]ection 5337(h) factor that is not expressly encompassed in [S]ection 5328(a) should be considered by the trial court under the catchall provision of [S]ection 5328(a)(16).

*D.K. v. S.P.K.*, 102 A.3d 467, 476–478 (Pa. Super. 2014) (emphasis and some brackets supplied).

The trial court herein admittedly did not explicitly consider the Section 5337(h) factors when considering the child's relocation to Delaware. Most notably, while the trial court noted the distance between the parties' residences, it did not consider the logistics and financial circumstances of the parties so that Mother could preserve her custody arrangements. And, as previously noted, the trial court did not fully examine the living situation at Father's residence and the likely impact the child's change of residence would have.

Accordingly, based upon all of the foregoing, we conclude that the trial court erred as a matter of law in granting sole physical and legal custody of

the child to Father, when Father never had custody of the child, was never joined as a party to the litigation, and did not formally seek custody by petition or counterclaim under Rule 1915.6. The burden of proving it is in a child's best interest for a trial court to grant custody falls on the party who seeks custody. Mother and Maternal Grandmother were the only parties who filed for, or sought, custody. The trial court erred as a matter of law by not joining Father as a party pursuant to Pa.R.C.P. 1915.6. Moreover, the trial court failed to properly consider all of the factors necessary for custody and relocation of a child. Furthermore, the trial court order directed that Maternal Grandmother be given visitation rights, subject to Father's approval as the named custodial parent. Because custody was improperly granted to Father, however, the visitation portion of the order was also improper. Hence, we vacate the entire order and remand for additional proceedings. We direct the trial court to join Father as a party under Rule 1915.6. Father must then file any objection to joinder within 20 days after notice of that order and may file a counterclaim asserting a right to physical or legal custody in the form of a complaint. If Father fails to do so, the trial court shall rule solely on the petitions filed by Mother and Maternal Grandmother and either grant or deny their specific requests. The trial court should provide copies of this Court's decision to Father, Mother, and Maternal Grandmother.

Order vacated. Case remanded for additional proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/18/2021</u>