J-A25040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADAM J. O'PATCHEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMANTHA THOMPSON | : | No. 755 WDA 2023 |

Appeal from the Order Entered June 16, 2023
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-20-007466

BEFORE: BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:          **FILED: March 26, 2024**

Adam J. O'Patchen ("Father") appeals from the order granting Samantha Thompson ("Mother") legal custody of their two children, Z.O. and A.O. ("Children"), for the limited purpose of selecting the Children's school for the 2023-2024 school year. After a thorough review of the record, we affirm.[1]

Briefly, Father and Mother were married on October 8, 2011. Z.O. was born in 2013 and A.O. was born in 2016 while the couple was married and living together in the Baldwin-Whitehall School District. Z.O. attended both kindergarten and first grade in this school district.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Neither party has requested that they be identified in the caption by their initials due to the sensitive nature of this custody matter, and therefore, we use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken." Pa.R.A.P. 904(b)(1)-(2). We will, however, refer to the minors involved in this dispute either by their initials or collectively as "Children" so as to protect their identities.

On March 5, 2020, Father filed a complaint in divorce. Father also contemporaneously filed a marriage settlement agreement signed by both parties. Pursuant to that agreement, both Father and Mother were to share physical and legal custody of the Children. On August 13, 2020, the divorce decree was granted.

At or around the time the divorce decree was granted, Mother moved out of the marital residence and located herself in the Chartiers Valley School District, with both Father and Mother, themselves alumni, agreeing that the Children would attend the schools in this new district. Subsequently, Father moved into his parents' home, which was in that same district.

Mother remarried on February 2, 2022, and moved into a new residence, located in the Upper St. Clair School District, with her husband. Having orally notified Father in January 2022, the Children were subsequently enrolled by Mother in Upper St. Clair.

On August 8, 2022, Father filed a motion that sought a court order requiring the Children to reenroll in Chartiers Valley School District. Ultimately, the court granted Father's motion and ordered the Children to be reenrolled in Chartiers Valley for the 2022-2023 school year. After Mother filed an emergency motion for reconsideration, the court scheduled a school choice hearing on December 12, 2022, but denied Mother's request for the Children to attend Upper St. Clair schools.

After two days of hearings, the court, on June 12, 2023, issued an order awarding Mother legal custody for the limited purpose of choosing the

Children's school district for the 2023-2024 academic year when Z.O. and A.O. would be in the fifth grade and second grade, respectively. Resultantly, Father filed a timely notice of appeal, and he has complied with his obligations under Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Father raises four issues for our review:

1. Did the trial court err in entering an order providing Mother with sole legal custody for the purpose of selecting the Children's school for the 2023-2024 school year?

2. Did the trial court err in overruling Father's objections to the submission of school rankings evidence into the record?

3. Did the trial court err in not considering the best interests of the Children in rendering its order?

4. Did the trial court err in not considering the preferences of the Children in rendering its order?

*See* Father's Brief, at 5.

As this is a custody determination, we note this Court's well-settled standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Graves v. Graves*, 265 A.3d 688, 693 (Pa. Super. 2021) (citation omitted).

Of relevance here, "[w]hen parties cannot resolve a dispute about where to educate their children, the court may act as arbiter to decide that issue, based on the best interests of the children." *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa. Super. 2018); *see also S.W.D. v. S.A.R.*, 96 A.3d 396, 403-04 (Pa. Super. 2014). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *D.K.D. v. A.L.C.*, 141 A.3d 566, 572 (Pa. Super. 2016) (citation omitted). We note that "[c]ontinuity in an educational environment is an important, but not controlling, factor to be considered by the court in making a school [ ] decision, and over-emphasis on this factor may constitute an abuse of discretion." *S.S.*, 189 A.3d at 1098.

When awarding custody, the trial court must consider the factors set forth in Section 5328(a) of the Child Custody Act as part of its decision. *See* 23 Pa.C.S. § 5328(a), (d); *see also Graves*, 265 A.3d at 694, 700. However, we have recognized that when the trial court is called upon solely to resolve an impasse over school choice and its decision does not otherwise affect the custody arrangement, the court is not required to explicitly consider each of the Section 5328(a) factors. *See S.W.D.*, 96 A.3d at 403-04.

Here, the court appropriately framed the issue before it in its Pa.R.A.P. 1925(a) opinion: "whether attending the Chartiers Valley School District or the Upper St. Clair School District served the best interests of the Children."

Trial Court Opinion, 7/31/23, at 5. In reaching its conclusion that attending schools in Upper St. Clair School District for the 2023-2024 school year was in the Children's best interests, the court considered "the reputations of the schools, the proximity to the Children, the Children's ability to adjust to transferring schools, the needs of the Children, and the preferences of the Children[.]" *Id*.

The court then went through the underpinnings of its decision. First, the court illuminated Mother's testimony wherein, through her own research, she ascertained that Chartiers Valley was a worse performing school district than Upper St. Clair. The court noted that Mother submitted, and the court admitted as evidence, "a chart of data she collected from the Department of Education, and the respective ratings of Upper St. Clair and Chartiers Valley from a website, Greatschools.org." *Id*., at 6 (citations omitted). Conversely, the court found Father's testimony, as to the relative strengths of each district, unpersuasive: "[w]hen pressed on how [Father concluded that Upper St. Clair was not a better school district than Chartiers Valley], Father referred to anecdotes from people who attended both schools." *Id*.

Mother also presented to the court school-performance reports from Niche.com, which indicated that "Upper St. Clair received an overall grade of A+ and was rated the 4th best school district in the Greater Pittsburgh Area. Chartiers Valley received and overall grade of B+ and was rated the 32nd best school district in the Pittsburgh Area." *Id*. The court used these reports as

"informative" guideposts: "[t]hey make it clear that Upper St. Clair School District is one of the best school districts in the Greater Pittsburgh Area." *Id*. Conversely, Father did not rebut this evidence with anything more than supposition, claiming the differences between the districts to be marginal.

Second, the court considered which school district would provide a better fit for the Children. The Children had attended Chartiers Valley during the previous school year, but Mother evidenced "legitimate concerns" with that District. *Id*., at 7. Specifically, the court heard testimony that:

> Z.O. is struggling with some of her subjects at Chartiers Valley. Mother testified that Z.O. doesn't do well with the "standardized common core" because she "thinks differently." Father submitted internet screen shots of Z.O.['s] grades from November and the end of the school year. Father's position was that [m]ath was Z.O.'s only issue. However, Father admitted that Z.O. could do better and struggled in other subjects at times. Z.O. has been evaluated for an Independent Education Plan (IEP). Z.O.'s grades in [m]ath and [r]eading are indeed behind her scores in other subjects.

> At Upper St. Clair, Z.O. would have the International Baccalaureate program ("IB program") available to her. Mother suggested that the IB program would offer Z.O. an alternative style of learning.

> Beyond Z.O.'s academic issues, she has had social issues at Chartiers Valley. Z.O. has been in four … fights this year in school. Father discounted them as Z.O. reacting and suggested these fights would happen anywhere.

> Young[er] child, A.O., has done well academically through the first[]grade at Chartiers Valley. However, her time at Chartiers Valley has not been without issue. Mother testified about an incident where A.O. did not get off the school bus at her stop. Despite A.O. being on the correct bus, Chartiers Valley could not locate her for an hour. This was understandably upsetting to Mother.

*Id*. (citations omitted).

Third, as to the Children's own testimony, both indicated that they had friends at Chartiers Valley. Z.O. said that she loved her time in that district, but also stated that there were some people who were mean. When asked, Z.O., while not knowing which district she wanted to attend, indicated that she leaned towards Chartiers Valley. *See* N.T., 5/23/23, at 12.

In summarizing their testimony, the court found that the Children had good experiences with both geographic communities: (1) both children liked Chartiers Valley; (2) Z.O. liked cheerleading in Upper St. Clair; and (3) A.O. was excited for a pool at the Upper St. Clair Community and Recreation Center. *See id*., at 8. However, the court did not see an overwhelming preference in school district from the Children.

The court also noted that "Father does not [personally] transport the Children to school, as he is not home when they leave[,]" *id*. (stating, further, that Father's brother ensures that the Children make it onto the school bus), so Father's custody would not be impacted by Children switching to Upper St. Clair schools. *See* N.T., 12/12/22, at 45 (establishing, through Mother's testimony, that Father's "work schedule prevent[s] him from being involved in school[]"); N.T., 5/25/23, at 39 (Father indicating that he is already at work when the Children are getting on the school bus). Relatedly, pursuant to the custody arrangement, Mother is responsible for the Children's transport to school more than Father, with Mother having seven days of responsibility to

Father's three over a two-week period. *See* Trial Court Opinion, 7/31/23, at 8-9. Accordingly, with Mother residing in that district, "[a]ttending school in the Upper St. Clair School District would be less of an inconvenience to the Children's morning commute." *Id.* at 9.

The court gave weight to Father's "concern about transferring schools again[.]" *Id*. Attendance at Upper St. Clair meant that Z.O. had attended three different schools over a five-year period, and Father was concerned about her academic performance and ability to make new friends. However, the court ascertained that Z.O.'s issues were largely specific to virtual learning during the COVID-19 pandemic. At Upper St. Clair, "she [would] be able to meet her classmates and attend school in-person." *Id*.

Ultimately, "[t]he [c]ourt found that the Children's best interest[s] [were] served by attending Upper St. Clair." *Id*., at 10. That district provided the Children with "the best opportunity to take advantage of their intellect by offering multiple approaches to learning[] and an education from the more renowned school." *Id*. Additionally, "[g]iven the custody arrangement, Upper St. Clair is much closer to their primary residence[.]" *Id*. The court also referenced the Children's "academic difficulties with their prior school." *Id*.

We first address Father's second appellate issue, in which he contends that the lower court erred in overruling his objections to the admission of school rankings evidence, claiming those documents to be hearsay. The trial court admitted three documents over Father's objection: a comparison chart

of the two school districts that Mother prepared herself incorporating Department of Education data and the respective rankings from Greatschools.org for Upper St. Clair and Chartiers Valley School Districts. *See* Exhibits 3-5; N.T., 12/12/22, 39-47. Father takes issue with the unknown author and sources of data underpinning the reports. Father then avers that "[t]here are no exceptions to the hearsay rule that would permit introduction of these documents, and the documents were utilized by the [c]ourt to support the [c]ourt's determination that Upper St. Clair is a superior school [district]." Father's Brief, at 12.

Hearsay is an out-of-court statement offered for the truth of the matter asserted and is generally inadmissible unless one of the hearsay exceptions applies. *See* Pa.R.E. 801(c); Pa.R.E. 802. "[W]here the statement is being offered to show its effect on a listener, it is not being offered for the truth of the matter and is non-hearsay." *Schmalz v. Manufacturers & Traders Tr. Co*., 67 A.3d 800, 803 n.3 (Pa. Super. 2013). Further, an out-of-court statement that is offered not for its truth but to explain a course of conduct is not hearsay. *See id.*; *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa. Super. 2003).

Here, the court found that "[t]he exhibits were relevant evidence of Mother's attempts to discuss the merits of the schools with Father." Trial Court Opinion, 7/31/23, at 10. Mother indicated that she researched the school districts "[f]or [Father], so [Father] can see the difference in the schools and

because [she] was trying to explain to him what an [International Baccalaureate] program was." N.T., 12/12/22, at 40. When Father was presented this information, which, to Mother, evidenced that Upper St. Clair was a better school district, she believed that he did not care much. **See id**. Of note, Mother testified that the International Baccalaureate program at Upper St. Clair gave students an opportunity to learn in a distinct way, unlike Chartiers Valley which was a "one size fits all" program. **Id**., at 44.

We find that the court's admission of the Greatschools.org printouts and Mother's school district comparison chart was proper as they were admitted for the non-hearsay purposes of showing Mother's course of conduct—her attempt to initiate a discussion with Father on the merits of the two school districts—and to demonstrate the effect of these documents on Father, or rather Father's lack of response. **See Schmalz**, 67 A.3d at 803; **Dent**, 837 A.2d at 577. The trial court did not rely on the factual assertions within the contested exhibits as proof of the relevant merits of those exhibits. We note that the lower court did rely on school district rankings submitted by Mother from Niche.com for the truth of the matter therein, that Upper St. Clair was one of the top ranked districts in the region. **See** Trial Court Opinion, 7/31/23, at 6-7 (declaring, *inter alia*, that the Niche.com reports "make it clear that Upper St. Clair School District is one of the best school districts in the Greater Pittsburgh Area[]"). However, these exhibits, which were offered by Mother's counsel on cross-examination of Father, were not objected to, and Father does

not challenge their admission in his brief. **See** Father's Brief, at 11-12; Exhibits 7-8; N.T., 5/25/23, at 68-69. Therefore, the question of whether the trial court improperly relied on the school district rankings contained within the Niche.com reports is not before this Court.[2]

Father's remaining three appellate issues concern whether the trial court abused its discretion in awarding Mother sole legal custody to choose the Children's school district for the 2023-2024 school year.[3] Father argues that the trial court overemphasized the Children's potential improved educational opportunities at Upper St. Clair schools when the Children had friends, were doing well academically, and are "having a positive experience in Chartiers Valley." Father's Brief, at 10-11. Father contends that the trial court did not sufficiently consider the Children's "need for stability and continuity in [their] educational life" which favored the status quo of Children remaining in Chartiers Valley where they were already ensconced in both the district and

_____

[2] We observe that this Court has previously determined that similar documents offered in a custody matter involving school choice constituted hearsay. **See M.S. v. J.K.**, 2021 WL 3629972 at *8 (Pa. Super. Aug. 17, 2021) (affirming a finding that a Pennsylvania Department of Education index demonstrating a school's academic performance constituted inadmissible hearsay, concluding that "the report was offered to show the truth of its statements – the quality of [a] school's academic program"); **see also** Pa.R.A.P. 126(b) (non-precedential Superior Court decisions after May 1, 2019 may be cited for their persuasive value).

[3] While Father frames his argument as a claim of legal error, he does not argue that the trial court deviated from applicable law, but instead that it improperly weighed the relevant factors.

related activities, and they had extended family on both sides of the family within that district. *See id.*, at 13-14 (citing 23 Pa.C.S. § 5328(a)(4) (child custody factor of "[t]he need for stability and continuity in the child's education, family life and community life")). Father additionally asserts that the trial court did not place adequate weight on the preference of Z.O., the elder child, to remain at Chartiers Valley. *See id.*, at 14-15 (citing 23 Pa.C.S. § 5328(a)(4) (child custody factor of "[t]he well-reasoned preference of the child, based on the child's maturity and judgment")).

Upon review, we conclude that the trial court thoroughly considered the competing interests, juxtaposed against the Section 5328(a) precepts, and reached a well-reasoned decision that Upper St. Clair was in the best interests of the Children's "physical, intellectual, moral, and spiritual well-being." *D.K.D.*, 141 A.3d at 572. In addition to the court's finding based on its review of the Niche.com exhibits "that Upper St. Clair is academically superior to Chartiers Valley," which the court found to be a "relevant, [but] not dispositive" factor, Trial Court Opinion, 7/31/23, at 6, the court noted multiple additional circumstances particular to this case that support Upper St. Clair as the "better fit" for the Children. *Id.* at 7. In particular, the court noted "legitimate concerns" with Chartiers Valley, including Z.O.'s struggles in some subjects, including math and reading, which Mother attributed to the Chartiers Valley's use of the "standardized common core" which does not benefit Z.O. as she "thinks differently." *Id.*; N.T., 12/12/22, at 32. To rectify this issue,

Mother indicated that the Upper St. Clair School District offers an alternative path to educational attainment in the International Baccalaureate program, which she believed to be better suited to Z.O.'s needs. *See* Trial Court Opinion, 7/31/23, at 7; N.T., 12/12/22, at 33, 42. The court also focused on the fact that Z.O. had been involved in four separate fights at Chartiers Valley during the previous school year. *See* Trial Court Opinion, 7/31/23, at 7; N.T., 5/25/23, at 16-17, 44-45. As to A.O., the court relied on Chartiers Valley not being able to locate her for an hour as indicia that safety could be a concern if she were to continue her education in that district. *See* Trial Court Opinion, 7/31/23, at 7; N.T., 12/12/22, at 32-33.

Contrary to Father, we find that the trial court appropriately considered the Children's testimony regarding which school they would like to attend. As the court noted, "[n]either of the Children were steadfast in their desire to attend one school over another." Trial Court Opinion, 7/31/23, at 8. This determination was based upon Z.O.'s testimony that she only was "lean[ing]" towards Chartiers Valley, but she did not "know where [she] want[ed] to go," as well as additional testimony from the Children that they liked or were excited about activities in the Upper St. Clair community. *Id.*; N.T., 5/25/23, at 15. Furthermore, the lower court weighed Father's concern with continuity in schools, but noted that Z.O.'s previous struggles in attending a new school related to virtual learning as a result of the COVID-19 pandemic, a circumstance that would not be present for the upcoming school year. *See*

Trial Court Opinion, 7/31/23, at 9; N.T., 5/25/23, at 44. The court also found that, based upon Mother having physical custody of the Children for the majority of the school days, they would be less inconvenienced by attending school in Upper St. Clair. **See** Trial Court Opinion, 7/31/23, at 8-9.

In sum, we conclude that the trial court's findings of fact are supported by competent evidence, and the conclusions drawn from the court's findings are reasonable. **See Graves**, 265 A.3d at 693. While Father requests that this Court reweigh the evidence and find in his favor on the question of the Children's school choice, as an appellate court, we may not usurp the trial court's primary authority as factfinder related to questions of custody. **See King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005) ("It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party.") (citation omitted). We therefore affirm the trial court's award of legal custody to Mother for the limited purpose of choosing the Children's school for the 2023-2024 school year.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/26/2024