J-A01044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MELINDA WENTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DUSTIN WENTZ | : | No. 2217 EDA 2025 |

Appeal from the Order Entered August 1, 2025
In the Court of Common Pleas of Carbon County Civil Division at No(s):
22-2051

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED MARCH 12, 2026**

Melinda Wentz ("Mother") appeals from the trial court's order granting primary custody of J.W. (age seven) and L.W. (age four) (collectively, "the Children") to Dustin Wentz ("Father").  Because of the great discretion accorded to trial courts in custody cases, we are compelled to affirm.

In Fall 2021, Father moved from the marital bedroom he shared with Mother in Lehighton due to his excessive drinking; in December 2022, he moved out of the house by mutual consent and moved into his mother's home.  The parties shared equal physical custody of the Children.  In August 2022, Mother began divorce proceedings.  Father filed a counterclaim for custody.  In February 2023, Mother filed a petition for custody and a notice of relocation to Milford, New Jersey.  The court entered an interim custody order by agreement and in June 2023, a modified custody agreement allowing shared, alternating custody.

**The 2024 Custody Decision Granting Mother Primary Physical Custody**

At a four-day custody hearing in March 2024, the trial court entered an order (the "March 2024 order") awarding joint legal custody and Mother primary physical custody of the Children on weekdays during the school year; the court also granted Mother's request to relocate. In granting that relief, the trial court cited Father's persistent abuse of alcohol, which on multiple occasions resulted in him being passed-out drunk or otherwise incapable of taking care of his then less-than-one-year-old child while Mother, who was pregnant with the couple's second child, was attending graduate school at night. *See* Trial Court Opinion, 6/10/24, at 1-5.[1] Father also drove drunk, was physically rough with one of the children, hid alcohol throughout the house, and was emotionally abusive to Mother. *See id*. at 5-6. Although Father attended Alcoholics Anonymous at the request of the couple's marriage counselor and obtained a breathalyzer, he defeated its effectiveness by taking alcohol tests as soon as he woke up. *See id*. at 6.

As a result of what the trial court heard at the 2024 hearing, including that Children had a close relationship with Mother and her parents, were moving to an excellent school district, and that Mother has other, involved relatives nearby and a "tremendous job opportunity" with a significant pay

_____

[1] In its opinion in the instant appeal, the trial court deemed its 2024 Opinion "important and helpful" to understand its reasoning. *See* Trial Court Opinion, 9/23/25, at 4.

raise, the court granted Mother permission to move with Children into her mother's home in New Jersey, one and one-quarter hours from Father's home. *See id*. at 7-9. The court further found Father inaccurately asserted Mother limited his contact with the Children, Mother was the primary caregiver, and relocation would substantially improve Mother's and Children's lives. *See id*. at 12-17.

**The 2025 Custody Decision Granting Father Primary Physical Custody**

Only seven months after the trial court's initial March Order, in October of the same year, Father filed a petition for modification of the March 2024 order; Mother filed an Answer and a Counterclaim petition for contempt. The trial court conducted hearings in June 2025, reversed its prior order, and granted Father primary physical custody on weekdays during the school year.

At the hearing in June 2025, Father's mother testified Father surmounted his alcohol problem and is a devoted father, including to his new child, whom the children like. *See* N.T., 6/18/25, at 5-13. Father testified he sought counseling that Mother opposed or ignored for J.W.'s post-separation anxiety. He further testified he is now a firefighter.[2] Father also asserted

---

[2] Father testified his work schedule is four-days off, four days on, from 3:00 p.m. to 7:00 a.m., although that will change in January 2026, when he will work 8 or 9 days per 31-day month. *See id*. at 29-30. Father was impeached on cross-examination about how flexible his schedule will be when he finishes his probationary period in January 2026. *See* N.T., 6/26/25, 167-68.

Mother is pushing for L.W. to go to kindergarten but Father believes he is not ready, Mother does not schedule events on Our Family Wizard, and Father tested negative for alcohol in 458 of 459 recent tests. *See id*. at 14-44, 87.

On cross-examination, Father admitted he records his calls with the Children, is not always the person who picks them up, on one custodial weekend, attended a wedding in North Carolina without the Children, J.W. had an IEP program in New Jersey, a school report suggested J.W. *is* ready for kindergarten, and Mother agreed to therapy for the Children. *See id*. at 95-170.

Father's "fiancée," Rachel, the mother of his latest child, testified Father is a great father, L.W. has trouble with counting, the Children do not look forward to their time with Mother, and Father, with approximately a year of alleged sobriety, no longer has an alcohol problem. *See id*. at 174-95.

Mother testified she had two relationships after separation (not three, as Father testified), Father missed various custodial times, sports practices, school events, and medical appointments (which were her sole responsibility), and on multiple occasions Father did not use all of his custodial time. Additionally, Mother testified that L.W. is scheduled to enter transitional kindergarten (which is less academic than traditional kindergarten), changing schools would affect the Children, Mother changed her schedule to be more available for the Children, and her parents and family were intimately involved in the Children's activities. Mother further testified J.W. told her Father said

- 4 -

he was fighting for custody; the "fiancée," Rachel, not Father, is the primary caretaker in Father's home, and Father did not include Mother in the process of selecting J.W.'s therapist. *See id*. at 204-46; N.T., 6/26/25, at 5-23.

On cross-examination, Mother admitted most of her attorneys' fees were spent on her contempt petition, and video shows L.W. repeatedly being upset when Mother came to pick him up. *See* N.T. 6/26/25, at 26-101.

Six-year-old J.W., whom the trial court examined at great length, testified he likes Rachel and gets along "the same" with Father and Mother and Mother's parents, and he "kind of" liked the move to New Jersey. J.W. testified he misses Mother when he is with Father and misses Father when he is with Mother, likes both his Pennsylvania and New Jersey schools and his friends there, and neither parent interfered with his calls to the other. *See id*. at 101-55.

When the hearing reconvened in July 2025, the trial court reviewed the sixteen custody factors under 23 Pa.C.S.A. § 5328. The court found those factors evenly balanced, except the following factors which favored Father: 2.3 (finding Mother is sometimes inflexible about switching custodial time, sometimes cuts Father's time short, and does not allow the Children to speak to him in the mornings), 4 (noting Mother's "relationships with various boyfriends," her trip to the Dominican Republic with a man and her report "nothing was going on," contrasted with the presence of the Children's half-sister in Father's home comprising "a family unit"), 6 (noting Father perceives

separation anxiety in J.W. but Mother does not), 8 (citing Father's testimony Mother tried to make J.W. change a school project in which he identified Father as his hero), 13 (stating there was some evidence Mother did not provide information about J.W.'s IEP program to Father), 15 (mostly rejecting Mother's assertions underlying the contempt petition). *See* N.T., 7/31/25, at 5-20.

The trial court stated three circumstances previously led it to grant Mother primary custody: 1) Father's drinking problem, 2) family stability, which was greater with Mother because of Father's drinking, and 3) Mother was the primary caretaker. It cited the following changed circumstances: "[F]ather is in a committed, steady relationship. . . . In contrast, [Mother] has had several friends of the male gender who have been involved in and out of her life." N.T, 7/31/25, at 24-25 (also stating with a new daughter and partner, Father has "a united family" and can offer more intimacy and more cohesiveness). The trial court then discussed Mother's inaccurate testimony about her relationships and stated, "[Mother] had this situation with going to the Dominican Republic with Matt, and the [c]ourt views with grave suspicion that this was a platonic situation. Life does not work that way. And so[,] the [c]ourt does not believe [Mother] has been completely candid." *See id*. at 25. The court also expressed concern about Mother's attempts to depict Father as not dedicated and involved in the Children's lives. *See id*. at 26.[3]

_____

[3] The court's opinion, discussed below, offers a stronger basis for its result.

On these bases, the trial court concluded granting Father primary custody was in the Children's best interest. *See id*. The court indicated reservations about reversing the order it entered slightly more than one year before, but stated, "[T]hese are young and resilient children." *Id*. Mother's attorney then objected that the court had failed to consider the relocation factors of Section 5337. *See id*. at 32. The trial court then examined those factors and stated, *inter alia*, it had "every reason to believe" J.W. will have an IEP in Pennsylvania, *see id*. at 35, the Children will make an "equally easy adjustment" returning to Pennsylvania as they did to moving to New Jersey, *see id*. at 35-36, there was some evidence of Mother trying to thwart the Children's relationship with Father, *see id*. at 37, and Father has an integrated family with his new child and fiancée, *see id*. at 37-38.

Mother timely appealed and she and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises four issues for this Court's review:

1.     Did the trial court commit an error of law by failing to carefully consider the factors set forth in 23 Pa.C.S.[A.] § 5337(h), where the [c]ourt's Order resulted in the relocation of the minor [C]hild[ren], as required under *Graves v. Graves*, 265 A.3d 688 (Pa. Super. 2021)?

2.     Did the trial court commit error of law by not applying the appropriate burden of proof upon Father as the proponent of relocation?

3.     Did the trial court err in its interpretation and application of 23 Pa.C.S.[A.] § 5328(a)(4)?

4.     Did the  trial court abuse its discretion by basing its decision upon findings of fact unsupported by the record?

- 7 -

Mother's Brief at 6-7.

Mother's first issue assails the trial court for first failing to consider the relocation factors set forth in 23 Pa.C.S.A. § 5337(h), part of the Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, and then failing to give them proper consideration.

Our standard of review in custody matters is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.C.S. v. M.C.S.*, 256 A.3d 449, 457–58 (Pa. Super. 2021) (internal citation omitted). This Court has recently emphasized:

> The abuse of discretion standard is highly deferential to the trial court. The evidentiary record of a custody appeal will often support a conclusion different than the one reached by the lower court. ***In a custody appeal, the sheer fact that a trial court could have found for the appellant is not a sufficient basis to reverse the court's decision.*** Deference must be given to the trial court, who viewed the parties, the witnesses, and the evidence firsthand. It is not the role of this Court to re-find facts, re-weigh evidence, and re-assess credibility.

*Carrero v. Lopez*, 300 A.3d 494, 501 (Pa. Super. 2023) (internal citations and quotations omitted; emphasis added).

- 8 -

Section 5337 of the Child Custody Act sets forth the procedures for relocation. Section 5337(b) provides that no relocation shall occur unless every person with custody of the children consents or the court approves the proposed relocation. *See* 23 Pa.C.S.A. § 5337(b). Subsection (c) provides notice requirements and (d) sets forth the way a party may object to a proposed relocation. *See id*. § 5337(c), (d). Additionally, "[t]he party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child[ren] as shown under the factors set forth in [section 5337(h)]." *Id*. § 5337(i)(1). *See also Carrero*, 300 A.3d at 501.

The trial court, when deciding a petition to modify custody, must consider the best interest of the child based on the following sixteen factors set forth in section 5328(a), which provided, at the time of these proceedings,[4] as follows:

> (1) Which party is more likely to ensure the safety of the child.
>
> (2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

---

[4] We note that our General Assembly amended section 5328(a) on June 30, 2025, with an effective date of August 29, 2025. *See* 2025 Pa. Legis. Serv. Act 2025-11 (H.B. 378). Since these proceedings concluded before the effective date, the June 30th amendments did not apply here. *See R.M. v. J.S.*, 20 A.3d 496, 513 n.15 (Pa. Super. 2011) (declining to apply revised version of statute in proceedings that concluded in the trial court several months prior to the effective date of the at-issue legislation).

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2.) Violent of assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect safety of the child.   A party's reasonable concerns for the safety of the child and party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party.   A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's

effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

(a.1) Exception –A factor under subsection (a) shall not be adversely weighed against a party if the circumstance related to the factor were in response to abuse or necessary to protect the child or the abused party from harm and the party alleging abuse does not pose a risk to the safety of the child at the time of the custody hearing. Temporary housing instability as a result of abuse shall not be considered against the party alleging abuse.

(a.2) Determination-No single factor under subsection (a) shall be itself be determinative in the awarding of custody. The court shall examine the totality of the circumstances, giving weighted considered to the factors that affect the safety of the child, when issuing a custody order that is in the best interest of the child.

23 Pa.C.S.A. § 5328(a); *See A.V. v. S.T.*, 87 A.3d 818, 821-22 & n.2 (Pa. Super. 2014).

Additionally, *when a parent seeks to relocate* and the non-relocating parent objects, the trial court must consider the following ten relocation factors in section 5337(h):

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h) (emphasis added); *see also E.D. v. M.P.*, 33 A.3d 73, 82 n.6 (Pa. Super. 2011) (noting that a trial court should consider the section 5337(h) factors when a parent provides notice of his or her intent to relocate and the non-relocating parent objects).

Section 5322 defines relocation as "[a] change in a residence of the child which substantially impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322. However, where neither parent is relocating, and only the custodial rights of the parties are at issue, a trial court's decision does not automatically require the court to consider section

5337 in its entirety. *See D.K. v. S.P.K.*, 102 A.3d 467, 473-74 (Pa. Super. 2014). Rather, the trial court should "consider the relevant relocation factors of section 5337(h) in its section 5328(a) best interest analysis" if a change in custody requires the child to move a significant distance. *See id*. at 476. Further, as noted in *D.K.*, several of the section 5328(a) best interest factors and the section 5337(h) factors overlap. *See id*. at 476-77 (noting overlap between the best interest factors 2, 3, 5, 6, 7, and 8 and relocation factors 1, 4, 5, 9). Additionally, where the child is to move a significant distance,

> the trial court would still need to consider the age, developmental stage, needs of the child and the likely impact the child's change of residence will have on the child's physical, educational and emotional development (23 Pa.C.S.A. § 5337(h)(2)), the feasibility of preserving the relationship between the other parent and the child (23 Pa.C.S.A. § 5337(h)(3)), and whether the change in the child's residence will enhance the general quality of life for the child (23 Pa.C.S.A. § 5337(h)(7)). Even though these three factors are not directly or implicitly encompassed in section 5328(a), they are clearly relevant to the decision of what is in the child's best interest when contemplating a move of significant distance to the other parent's home, and are therefore necessarily part of the trial court's analysis pursuant to section 5328(a)(16), which requires a trial court to consider "any other relevant factor" in making a custody determination. 23 Pa.C.S.A. § 5328(a)(16).

*Id*. at 477.

In any custody action, the trial court must "delineate the reasons for its decision on the record in open court or in a written opinion or order." *See* 23 Pa.C.S.A. § 5323(d); *see also A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013) (noting section 5323(d) applies to cases involving custody and relocation). However, "there is no required amount of detail for the trial

court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *See M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

Mother asserts the trial court did not consider the relocation factors because it did not specifically discuss them when it originally announced its findings. *See* Mother's Brief at 21-24, citing *Graves*. She next asserts when the trial court *did* consider those factors at her request, it gave factors 2, 3, and 7, only cursory consideration. She notes the court assumed J.W.'s IEP would not be a problem, assumed, without support, Mother would be able to preserve her relationship with the Children, and failed to explain why its decision would enhance the Children's lives or why Mother's relationships with boyfriends raised concerns. *See* Mother's Brief at 25-36.

The trial court asserts neither party had formally filed for relocation and, in any event, the relocation factors largely overlap with the custody factors, and the one- to one-and-one-quarter-hour move is not a significant distance implicating the relocation factors. It asserts the Children are resilient and there will be no problem getting J.W. an IEP in Pennsylvania, Mother will have the ability to maintain a close, good connection with Children, and Father's "integrated family" was in the Children's best interest because Mother "does not have that same ongoing intrafamily relationships of an entire family." *See* N.T., 7/31/25, at 39. Finally, the trial court asserts it essentially considered

- 14 -

the relocation factors although it did not say so explicitly. *See* Trial Court Opinion, 9/23/25, at 17-25.

In view of the deferential standard of review we accord a trial court's decisions in custody matters, we cannot grant Mother relief on this claim. Although **Graves** holds that where children are moving a "significant distance" courts should consider the relocation factors, **See Graves**, 265 A.3d at 701, it is unclear from the case law that a move of slightly more than one hour constitutes a significant distance.[5] Moreover, although the court did not originally assert it considered the relocation factors when announcing its finding, the court did consider them and is also correct in stating the relocation factors substantially overlap with the custody factors.[6]

In Mother's second issue, she asserts the court failed to make Father meet his burden to show the move would be in the Children's best interest. **See** Mother's Brief at 37-41 (citing one case involving a move to Germany

---

[5] The distance at issue in **Graves** (from Philadelphia to Delaware) was approximately sixty miles; here, Father's and Mother's homes are a little more than one hour's drive from each other.

[6] We are cognizant of Mother's argument that Father testified J.W. was having adjustment difficulties, undermining the trial court's assertion of the Children's resiliency. Additionally, we find problematic the court's characterization of Father's "integrated family" (the record indicates that father is living with his pregnant girlfriend who, according to the testimony, he has pledged to marry at some point but was not the case at the time of the hearing) with its stated concern about Mother's dating life, without indicating how any new partners had a negative influence on the Children, an issue we discuss *infra* in analyzing Mother's third claim.

- 15 -

and another case involving parents in Pennsylvania and Florida, and an unpublished case holding that where the *status quo* is not an option, each party must prove their request is in the child's best interest).

We cannot agree with Mother.  The trial court clearly weighed all the relevant factors and determined the changed circumstances Father alleged met the burden to show the move was in the Children's best interest.

Mother's third issue asserts the trial court erred in its consideration of custody factor (a)(4), the need for stability and continuity in the child's education, family life and community life.  She asserts the trial court overemphasized Father's "united family" as compared to her brief romantic relationships.  Mother states there was no evidence her relationships harmed the Children, and the court failed to consider the significance of her status as primary caretaker.  Mother also cites cases holding a parent's sexuality is irrelevant unless it influences the child.  **See** Mother's Brief at 41-48, citing, *inter alia*, **V.B. v. J.E.B.**, 55 A.3d 1193, 1202 (Pa. Super. 2012).

Mother also states the trial court's reliance on the Children's resiliency and preference for Father's nuclear family is without record support.  She notes the court acknowledged a concern about moving Children again but did not assess that effect.  **See** Mother's Brief at 45-46, citing **R.S. v. T.T.**, 113 A.3d 1254, (Pa. Super. 2014) (requiring trial court "to fully discuss the possible effect on the child of the proposed transfer of custody"); **Collins v.**

*Collins*, 897 A.2d 466, 478 (Pa. Super. 2006) (reversing where trial court failed to consider Mother's role as primary caretaker).[7]

The trial court found a series of changed circumstances between the March 2024, hearing and the June 2025 hearing supported its grant of primary custody to Father including his dramatic reduction of his drinking, Mother's perceived unwillingness to put the past behind her and work cooperatively with Father (including her failure to honor his phone time with Children, unfair criticism of Father for not attending distant school events, consistent rescheduling of medical appointments without concern for his schedule, lack of flexibility with scheduling of Father's custody, and unkindness to the fiancée). *See* Trial Court Opinion, 9/23/25, at 7-14. The trial court also found changed circumstances concerning where was the best place for the Children to live: Father now has a stable relationship and a new child with whom Children have a close connection, whereas Mother has had three relationships including a broken engagement and has introduced Children to two of those men, and paternal grandmother is as helpful as Mother's parents. *See id*. at 14-17.

We are deeply concerned with what we consider the trial court's improper focus on Mother's adult vacation with a male friend without the

_____

[7] Mother concedes the "primary caretaker" doctrine has been abrogated.

Children where there is no evidence that would have allowed the court to conclude the trip had an adverse effect on the Children. *See* N.T, 6/26/25, at 34-35. What Mother did on an adult vacation with a friend while the Children were with Father was irrelevant to the custodial decision before the trial court. Additionally, were we the factfinder, we might not have elected to assign as much favorable weight as the trial court does to Father's new parentage of another child and its alleged result in a "united family."[8] However, given the standard of review and the totality of the trial court's findings, we cannot determine on this record that the trial court abused its discretion in its consideration of the relevant custodial factors. We are required under the controlling standard of review to accord deference to the trial court, who viewed the parties and heard the witnesses and the evidence firsthand, and cannot substitute our own opinion or make independent factual findings. *See Carrero*, 300 A.3d at 501; *Taylor v. Smith*, 302 A.3d 203, 207 (Pa. Super. 2023).

Mother's final issue asserts the trial court abused its discretion by relying upon facts unsupported by the record. Mother provided no specificity about

---

[8] In this regard, we commend Mother's counsel for refraining from cross examining Father or "fiancée" about the rapidity with which he impregnated another woman following the 2024 grant of primary custody to Mother resulting in part from Father's abuse of alcohol, or about the potential negative effect on the Children Father's out-of-wedlock cohabitation with the woman he impregnated would have, which although intensely personal is a line of questioning clearly more relevant than Mother's adult vacation without her children as the Children live with the "fiancée" when Father has custody.

this claim in her Rule 1925(b) statement and the trial court did not address it. Accordingly, the claim is waived. **See** Pa.R.A.P. 1925(b)(4)(ii) (providing that a statement of matters complained of on appeal "shall concisely identify each error that the appellant intends to assert to identify the issue to be raised for the judge").

Even if Mother's claim were reviewable, it would not merit relief. Mother challenges the court's statement that Father has not used alcohol since the last custody decision and cites his testimony he still drinks alcohol "occasionally." **See** Mother's Brief at 49-50. In context, the trial court clearly found Father no longer had a problem with alcohol, not that he had not had a single drink since the 2024 custody decision. Mother's claim merits no relief.

Judgment affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2026