J-A04001-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TARA MOSS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRAIG MOSS | : | |
| | : | |
| Appellant | : | No. 1126 MDA 2025 |

Appeal from the Order Entered July 23, 2025
In the Court of Common Pleas of York County
Civil Division at No(s):  2015-FC-0000335-03

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED MARCH 24, 2026**

Craig Moss ("Father") appeals from the order granting Father's petition to lift supervision requirements, denying Tara Moss's ("Mother") petition for modification and contempt, and thereby leaving in place the *status quo* of the parties' custody arrangement. After our thorough review, we affirm on the basis of the trial court's opinion.

The procedural history of this matter is incredibly litigious.[1] Mother and Father are the biological parents of three minor children, A.N.M., X.N.M., and

---

[1] The trial court notes that "[a] cursory review of the docket will show that, throughout this case, Father has repeatedly filed documents resulting in the case being bounced between judges and creating confusion over what matters are/were pending before the court at any given time, as well as complicating the scheduling of them. The continued filing of excessive, and at times frivolous, motions unfortunately continues to this date." Trial Court Opinion, 9/16/25, at FN1.

A.E.M ("Children"). Mother and Father are married but have been separated for many years. Children have been living primarily with Mother.

On April 5, 2023, Mother filed a complaint for custody seeking shared legal custody and primary physical custody of Children. In her complaint, Mother requested that the court limit Father to supervised physical custody and order Father to participate in a "Threat of Harm Evaluation" with a licensed professional. *See* Complaint, 4/5/23, at ¶ 17. Leading up to the custody trial, Father proceeded to file numerous motions and petitions.

On December 29, 2023, the trial court held a custody trial. On January 8, 2024, after consideration of the evidence and the 23 Pa.C.S.A. § 5328 custody factors, the trial court entered a final order of custody that awarded the parties shared legal custody, Mother primary physical custody, and Father supervised partial physical custody on alternating weekends. We dismissed Father's appeal from the January 2024 custody order on the basis that he failed to preserve any issues on appeal and his appellate brief had substantial defects precluding meaningful appellate review. *See Moss v. Moss*, 148 MDA 2024 (Pa. Super. filed June 6, 2024) (unpublished memorandum).

The trial court summarized the procedural history following the above appeal, relevant to the instant appeal, as follows:

> On October 15, 2024, Mother filed petition for contempt and petition for modification of court order, at which time the matter was reassigned to [Judge Kelley L. Margetas]. On November 1, 2024, Father filed an answer to [Mother's] petition for contempt and petition for modification of court order. On November 20, 2024, the court entered an interim order and scheduled a pretrial

conference for January 24, 2025. On December 4, 2024, Mother filed a motion to continue the pretrial conference due to a scheduling conflict with her counsel, which was granted over Father's objection, rescheduling the pretrial to February 28, 2025.

A pretrial conference was held on February 28, 2025, at which time there were a number of matters outstanding, so the conference was continued until April 22, 2025. In the interim, Father filed a petition for reconsideration and motion for leave to file petition for reconsideration *nunc pro tunc* of a directive originally issued by [the prior Judge], but incorporated without objection into the February 28, 2025 pretrial order, directing disclosure of his protected mental health records. The court expressly granted *nunc pro tunc* reconsideration of the orders limited to the issue of Father's mental health records, which was consolidated to be argued at the April 22, 2025, pretrial conference. On April 22, 2025, the court directed that Father was not required to turn over the previously ordered mental health records and scheduled trial for July 18, 2025.

Following the pretrial conference, Father continued to file repeated motions with the court as follows, the majority of which were deferred to the previously set trial date. On April 25, 2025, Father filed a petition to lift supervision requirements. On May 20, 2025, he filed a petition for risk assessment and motion to compel (CYF-related). On June 11, 2025, he filed a request for permission to bring equipment into the Judicial Center, which was granted. On June 16, 2025, he filed a document entitled ["]Compliance with Court Order or Official Reports["], to which no response appeared to be required. On June 24, 2025, he filed a petition for sanctions and declaratory orders. On July 3, 2025, he filed a motion to amend witness list and request for appearance via Zoom, the latter of which was granted.

On July 3, 2025, Mother filed an application for continuance of the trial, which was opposed and was denied by the court. On July 7, 2025, an emergency motion to quash subpoena served upon a non-party witness was filed by WellSpan Health and Julia F. Arpino, MD. The same day, Father filed a response and memorandum of law in opposition to the motion to quash. The motion was deferred to the start of trial, and was ultimately granted on July 18, 2025.

On July 18, 2025, the [court] conducted a full day custody trial in this matter. Notably[,] at the outset of the trial, the court attempted to set forth all of the outstanding matters currently before it, given the voluminous, rambling and vexatious paperwork that was continuously being filed by Father in this matter, giving rise to conflation over what issues were even before the Court.

At the conclusion of the trial, the [court] granted Father's petition to lift supervision requirements, and denied Mother's petition for modification and contempt, leaving in place the status quo with Mother maintaining primary physical custody and Father having unsupervised partial physical custody on alternating weekends. Additionally, the court denied Father's petition for risk assessment and motion to compel filed May 20, 2025, as well as his petition for sanctions and declaratory order filed June 24, 2025; the motion to amend witness list was dismissed as moot.

Trial Court Opinion, 9/16/25, at 7-9 (footnotes and unnecessary capitalization omitted). Father timely appealed and filed a contemporaneous statement of errors. *See* Pa.R.A.P. 1925(a)(2)(i). The trial Court filed a Rule 1925(a) opinion. *See* Pa.R.A.P. 1925(a)(2)(ii).

On appeal, Father raises the following issues for our review:

I. The court erred by refusing to vacate an order procured by deliberate fraud and perjury, as Pennsylvania court's possess the inherent power to rescind orders obtained through fraud on the court.

II. The trial court abdicated its statutory duty under Kayden's Law by refusing to compel disclosure of CYS records and order a risk assessment, thereby ignoring substantial evidence of harm to the children.

III. The trial court erred and abused its discretion by excluding from evidence Mother's criminal convictions spanning from 2014 through 2025, including guilty pleas involving domestic violence and conduct against Father. This information was directly relevant to the custody determinations under 23 Pa.C.S.A. § 5328 (a)(2)

and 5329(a), and frustrat[es] the safety-first focus of Act 8 of 2024 (Kayden's Law).

IV. Did the court further err by discounting the undisputed record of Mother's recent hospitalizations, ignoring the principle that "acts of refusal as well as incapacity to perform parental duties" can equally endanger children and must be weighed under § 5328(a)(2)?

V. Did the court abuse its discretion by refusing to admit [Father]'s trial exhibits and thereby preventing the creation of a complete appellate record, contrary to Pa.R.A.P. 1921?

VI. The trial court erred and abused its discretion when it granted Father 44 days of visitation per year and ignoring the express judicial goal of 50/50 custody.

VII. Did the trial court commit reversible error by failing to articulate specific findings of fact and a reasoned analysis of the 16 factors of 23 Pa.C.S,A. § 5328(a), thereby precluding meaningful appellate review?

Appellant's Brief, at 1-2 (cleaned up).

Our scope and standard of review of custody decisions is well-settled:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.... However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial

court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

The test is whether the evidence of record supports the trial court's conclusions.

*C.M. v. M.M.*, 215 A.3d 588, 591 (Pa. Super. 2019) (citations omitted; brackets in original). "Simply stated, [t]he test is whether the evidence of record supports the trial court's conclusions and the conclusions are grounded in a comprehensive evaluation of the best interest of the child." *H.C.Z. v. J.K.Z.,* 236 A.3d 1106, at *2 (Pa. Super. filed April 17, 2020) (unpublished memorandum) (citation omitted; brackets in original).[2]

After reviewing the record, Father's brief, and the Honorable Kelley L. Margetas' well-reasoned Pa.R.A.P. 1925(a) Opinion, we conclude Father's issues merit no relief. Judge Margetas' opinion effectively disposes of the questions presented on appeal. *See* Trial Court Opinion, 9/16/25, at 11-20 (Finding: (1) The time to appeal Father's first issue has substantially passed as the December 29, 2023 custody order is almost two years old, and that Father already had the opportunity to appeal the order, but failed to properly preserve his issues; (2) Father's claim that the court erred by excluding evidence of Mother's criminal convictions is belied by the record because the court allowed Father to testify regarding the substance of many of Mother's

_____

[2] Unpublished decisions filed after May 1, 2019 may be cited for their persuasive value. *See* Pa.R.A.P. 126(b).

convictions, further Mother's criminal convictions predate the custody trial and would have limited relevance to the current modification, and the court properly declined hearsay statements to be read into the record; (3) the court did not erred by denying Father's subpoena for CYS records because that request was previously denied by a court of coordinate jurisdiction; (4) the court properly denied Father's request to compel the production of Mother's medical records based on testimony and argument provided, leading to the court's concerns that Father likely unlawfully accessed Mother's protected medical information; (5) Father cites to incorrect law by relying on Section 5329.1 and, in any event, Father failed to timely compel Mother to complete a risk assessment; (6) the court properly refused to admit Father's binder of unidentified and unauthenticated documents into the trial record because Father failed to properly present, authenticate and/or request admission of these numerous documents; (7) the trial court went through the custody factors and stated its findings on the record, and also incorporated by reference the prior custody trial and findings of fact, as the parties were seeking modification, not to relitigate a full custody trial).[3]

_____

[3] Father's statement of questions involved presented in his appellate brief differs slightly from the presentation of his issues raised in his Rule 1925 statement. We have excluded the court's analysis of the final issue raised in his concise statement, as Father appears to have abandoned that issue on appeal. The remainder of his issues appear to be raised in his appellate brief either on their own, or mixed in with other issue sections.

We affirm on the basis of the trial court's September 25, 2025 opinion and commend the trial court for its notable patience in dealing with this contentious case.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/24/2026

York County Prothonotary E-Filed - 16 Sep 2025 04:11:18 PM
Case Number 2015-FC-000335-03

3-1925A OPINION 9-16-25

IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
FAMILY DIVISION

| | | |
|---|---|---|
| TARA N. MOSS, | : | 2015-FC-000335-03 |
| Plaintiff/Appellee | : | |
| | : | 1126 MDA 2025 |
| v. | : | |
| | : | |
| CRAIG E. MOSS, | : | |
| Defendant/Appellant | : | |

**MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO
RULE 1925(a)(2)(ii) OF THE RULES OF APPELLATE PROCEDURE**

The Court received a Notice of Appeal, docketed on August 15, 2025, that Appellant,

Craig E. Moss (hereinafter "Father") appeals to the Superior Court of Pennsylvania from the

Order entered in the above-captioned matter on July 18, 2025. The Court now issues this

Memorandum Opinion in support of its July 18, 2025, Order.

On April 5, 2023, Appellee, Tara N. Moss (hereinafter "Mother"), filed a Complaint for

Custody seeking shared legal custody and primary physical custody of the three subject children

A.N.M., X.N.M. and A.E.M. Mother sought for Father to be awarded rights of supervised partial

physical custody.

On May 30, 2023, Father filed a Motion to Compel Hair Follicle Drug Testing of

Mother.[1] On June 1, 2023, Father filed a Petition for Emergency Custody. Father alleged that

the children were unsafe in Mother's care due to Mother facing the possibility of incarceration

and her alleged threats to the safety of two of the children in a criminal matter docketed at CP-

---

[1] A cursory review of the docket will show that, throughout this case, Father has repeatedly filed documents resulting in the case being bounced between judges and creating confusion over what matters are/were pending before the court at any given time, as well as complicating the scheduling of them. The continued filing of excessive, and at times frivolous, motions unfortunately continues to this date.

1

67-CR-0004362-2023. On January 3, 2024, the Honorable Amber A. Kraft dismissed two of the three charges, including the terroristic threats charge relating to the children, and the remaining charge for stalking[2] related to Father. In his June 1, 2023, Petition for Emergency Custody, Father also raised Mother's criminal charges docketed at CP-67-CR-0002524-2023, for theft of property lost etc. by mistake[3] and harassment - communication repeatedly in another manner,[4] wherein Father is the alleged victim in each count.

On June 13, 2023, the Honorable N. Christopher Menges, regarding Father's emergency petition and motion to compel, ordered Mother to comply with the requested drug testing and made notable findings. While Judge Menges noted that Mother was charged with terroristic threats, he also noted that Father was declared a threat of harm by the conciliator for various reasons including but not limited to Father's indication to the conciliator that he would not follow any custody order. Accordingly, Judge Menges continued the matter for decision by Judge Steven Stambaugh. Judge Menges also made the following statement and order:

> Additionally, a copy of this order is being served on the Solicitor for York County Offices of Children, Youth, and Families and a representative from York County Offices of Children, Youth, and Families is ordered to be at the pre-trial conference on July 17th at 1:30 p.m. in front of Judge Stambaugh because **it appears there is some possibility these children are dependent since it appears that perhaps neither mother nor father may be able to enjoy majority physical custody of these children because of various offenses, threats of harm and so forth in this rather complicated situation.**

---

2 18 Pa.C.S. § 2706(a)(1)
3 18 Pa.C.S. § 3924
4 18 Pa.C.S. § 2709(a)(7)

2

Order of June 13, 2023, at 2-3 (emphasis added). No representative from York County Offices of Children, Youth, and Families appeared at the scheduled Pre-Trial Conference. On June 14, 2023, Father filed a Petition for Reconsideration, which Judge Menges denied on June 23, 2023.

On July 28, 2023, Father filed a Motion to Recuse alleging, among other things, that Judge Stambaugh, in "deliberate indifference to the safety and wellbeing of the children," demonstrating bias and hostility towards Father, refused to rule on Father's petition. Motion to Recuse at ¶ 14. On August 3, 2023, Judge Stambaugh issued an Order denying Father's recusal motion.

On August 14, 2023, Father filed a Motion for Contempt of Court alleging Mother had, in greater detail, taken steps, including contacting the Pennsylvania Board of Probation and Parole, who has oversight of Father, to frustrate Father's communication with the children. On August 15, 2023, Judge Stambaugh issued an Order consolidating Father's contempt motion with the custody trial, which was set to begin on September 5, 2023.

On August 16, 2023, Father filed a Notice of Proposal to Call Additional Witnesses. Father sought to call Kiana Jackson, an employee of the York County District Attorney's Office, as well as conciliator, Amy E.W. Ehrhart, Esquire. On September 5, 2023, Judge Stambaugh issued an Order quashing the subpoena issued to Conciliator Amy E.W. Ehrhart. On September 7, 2023, Judge Stambaugh issued an Order granting the York County District Attorney's Motion to Quash Subpoena relating to Ms. Jackson.

The custody trial apparently commenced on or about September 7, 2023, but was rescheduled to continue on Friday, October 20, 2023.

3

On September 26, 2023, Father filed a Removal of Defendants [sic] Officials [sic] Documents II. On October 20, 2023, Judge Stambaugh entered an Order denying Father's "Removal of Defendants [sic] Official Documents II."

Also on September 26, 2023, Father filed a Motion to Quash. Therein, Father asserted that Judge Stambaugh was acknowledging and condoning Mother's violation of the Controlled Substance, Drug, Device and Cosmetic Act in seeking to introduce, via a prescription bottle abandoned by Father at Mother's residence,[5] evidence that Father was refusing to take mental health medications. On October 20, 2023, Judge Stambaugh entered an Order denying Father's Motion to Quash.

On September 28, 2023, Father filed a Motion to Order CYF to Supervised [sic] Father for Visits. On October 20, 2023, Judge Stambaugh entered an Order Denying Father's Motion to Order CYF to Supervised [sic] Father for Visits.

On October 12, 2023, Father filed a Motion to Dismiss for Mootness claiming, *inter alia*, that Mother, as a condition of bail in her case docketed at CP-67-CR-0004362-2023, was disallowed from having any contact with the alleged victims, which included the subject children X.N.M. and A.E.M. As such, Father asserted that Mother lacked standing to sue for custody. Father demanded dismissal of the custody action for mootness. On October 17, 2023, Judge Stambaugh entered an Order scheduling Father's Motion to Dismiss for Mootness at the upcoming trial on October 20, 2023.

---

5 Judge Stambaugh noted that Father disputes whether he abandoned the medication bottle in question.

4

Also on October 12, 2023, Father filed a Motion for Contempt of Court in which Father alleged that Mother had frustrated his ability to speak with A.N.M., who was in Mother's custody, and X.N.M. and A.E.M., who were in the custody of Mother's adult daughter Kaden Dennis.

On October 19, 2023, Mother's counsel filed an Application for Continuance seeking to continue the rescheduled trial date and stating that Mother was admitted to the hospital on October 18, 2023, was pending surgery, and that Mother would not be released for several days. Father opposed this continuance request on the basis that Mother was represented and did not need to be present for trial. On October 19, 2023, Judge Stambaugh granted the continuance and scheduled trial to continue on the earliest available date of December 29, 2023. On October 20, 2023, Father filed a Motion to Dismiss for Mootness that, on its face, appears to track the language and arguments of his October 12, 2023, Motion to Dismiss for Mootness. On October 20, 2023, Judge Stambaugh entered an Order scheduling Father's outstanding Motions to Dismiss for Mootness and for Contempt of Court to be heard at the continued trial date of December 29, 2023.

On October 20, 2023, Father filed a Motion for Joinder. Therein. Father again asserted that, due to Mother's bail conditions in CP-67-CR-0004362-2023, X.N.M. and A.E.M. were taken from Mother. Referring to a Ms. Dennis, who from context appears to be the eldest step-sister, Kaden Dennis, referenced *supra*, Father stated that no court had granted Kaden Dennis in *loco parentis* status, that Ms. Dennis, in contravention of the Interim Order, refused to allow Father to speak to the children, and that, therefore, Ms. Dennis needed to he joined in the custody action so that she could be held in contempt. On October 31, 2023, the Honorable N.

5

Christopher Menges entered an Order scheduling Father's October 20, 2023, Motion for Joinder to be heard at the continued trial date on December 29, 2023.

Also on October 20, 2023, Father filed a Motion for Modification of Custody Order. Father made numerous assertions, including that, in spite of the conciliator's finding that Father might pose a threat to the children of psychological harm, as Father has never been accused, nor convicted, of any crimes against children then the Court should not require his visitation to be supervised. Father also, again, questioned the propriety of Ms. Dennis caring for the two children who were the subject of Father's terroristic threats allegations against Mother.

On November 6, 2023, Father filed a Motion for Contempt of Court. Therein, Father avers, *inter alia*, that Mother and Ms. Dennis continued to flout the Interim Order allowing Father contact. On November 8, 2023, Judge Stambaugh entered an Order scheduling a hearing on Father's Motion for Contempt for November 22, 2023. At the hearing, Judge Stambaugh entered an Order consolidating hearing on Father's Motion for Contempt with the upcoming custody trial.

On November 29, 2023, Judge Stambaugh entered an Order directing Mother to produce the children for the upcoming trial.

On November 29, 2023, Father filed a Petition to Order Subpoena of Documents. On December 7, 2023, Judge Stambaugh entered an Order denying Father's Petition to Order Subpoena of Documents based upon a finding that Father had failed to identify himself as belonging to one of the enumerated classifications in 23 Pa.C.S.A. § 6340(a) (Release of information in confidential reports) and 55 Pa. Code § 3490.91 (Persons to whom child abuse information shall be made available). Additionally, on December 7, 2023, Judge Stambaugh

6

entered an Order Granting York County Children, Youth & Families' Motion to Quash Subpoena for the same reasons.

On December 29, 2023, the rescheduled custody trial was held and concluded, and Judge Stambaugh entered a Final Order of Custody Following Custody Trial, which was docketed on January 8, 2024. Judge Stambaugh awarded the parties shared legal custody, awarded Mother primary physical custody, and awarded Father supervised partial physical custody on alternating weekends. Judge Stambaugh also issued a contemporaneous Opinion in Support of Final Order of Custody, which was also docketed on January 8, 2024.

On January 25, 2024, Father filed a Notice of Appeal of Judge Stambaugh's Final Order. Following a flurry of Orders and filings regarding the sufficiency of Father's concise statement, the Superior Court of Pennsylvania entered a Memorandum on June 6, 2024, dismissing his appeal on the basis that his Rule 1925(b) statement failed to preserve any issues and/or his brief had substantial defects precluding meaningful appellate review.

On October 15, 2024, Mother filed Petition for Contempt and Petition for Modification of Court Order, at which time the matter was reassigned to the undersigned.[6] On November 1, 2024, Father filed an Answer to Plaintiff's Petition for Contempt and Petition for Modification of Court Order. On November 20, 2024, the Court entered an Interim Order and scheduled a pretrial conference for January 24, 2025. On December 4, 2024, Mother filed a motion to continue the pretrial conference due to a scheduling conflict with her counsel, which was granted over Father's objection, rescheduling the pretrial to February 28, 2025.

---

6 Effective as of October 9, 2024, Judge Stambaugh is currently suspended by Order of the Commonwealth of Pennsylvania Court of Judicial Discipline.

7

A pretrial conference was held on February 28, 2025, at which time there were a number of matters outstanding, so the conference was continued until April 22, 2025. In the interim, Father filed a Petition for Reconsideration and Motion for Leave to File Petition for Reconsideration *Nunc Pro Tunc* of a directive originally issued by Judge Stambaugh, but incorporated without objection into the February 28, 2025 pretrial order, directing disclosure of his protected mental health records. The Court expressly granted *nunc pro tunc* reconsideration of the Orders limited to the issue of Father's mental health records, which was consolidated to be argued at the April 22, 2025, pretrial conference. On April 22, 2025, the Court directed that Father was not required to turn over the previously ordered mental health records and scheduled trial for July 18, 2025.

Following the pretrial conference, Father continued to file repeated motions with the Court as follows, the majority of which were deferred to the previously set trial date. On April 25, 2025, Father filed a Petition to Lift Supervision Requirements. On May 20, 2025, he filed a Petition for Risk Assessment and Motion to Compel (CYF-related). On June 11, 2025, he filed a Request for Permission to Bring Equipment into the Judicial Center, which was granted. On June 16, 2025, he filed a document entitled Compliance with Court Order of Official Reports, to which no response appeared to be required. On June 24, 2025, he filed a Petition for Sanctions and Declaratory Orders. On July 3, 2025, he filed a Motion to Amend Witness List and Request for Appearance via Zoom, the latter of which was granted.

On July 3, 2025, Mother filed an Application for Continuance of the trial, which was opposed and was denied by the Court. On July 7, 2025, an Emergency Motion to Quash Subpona Served Upon a Non-Party Witness was filed by WellSpan Health and Julia F. Arpino, MD. The same day, Father filed a Response and Memorandum of Law in Opposition to the

8

Motion to Quash. The motion was deferred to the start of trial, and was ultimately granted on July 18, 2025.

On July 18, 2025, the undersigned conducted a full day custody trial in this matter. Notably that at the outset of the trial, the Court attempted to set forth all of the outstanding matters currently before it, given the voluminous, rambling and vexatious paperwork that was continuously being filed by Father in this matter, giving rise to conflation over what issues were even before the Court.[7]

At the conclusion of the trial, the undersigned granted Father's Petition to Lift Supervision Requirements, and denied Mother's Petition for Modification and Contempt, leaving in place the status quo with Mother maintaining primary physical custody and Father having unsupervised partial physical custody on alternating weekends. Additionally, the Court denied Father's Petition for Risk Assessment and Motion to Compel filed May 20, 2025, as well as his Petition for Sanctions and Declaratory Order filed June 24, 2025; the Motion to Amend Witness List was dismissed as moot.

On August 14, 2025, Father filed his Notice of Appeal to Superior Court and Statement of Matters. Therein, Father complains the following:

1. The court erred by failing to vacate the prior custody order entered on December 29, 2023, even after Father presented clear and convincing evidence, through expert

---

[7] N.T. 7/18/25, pp. 2-7. Indeed, the Court repeatedly asked Father to identify where in his voluminous filings he requested primary custody, to which he advised the court he had not. *See id.* at 5 ("Prior to the filing of the risk assessment, that is not denoted in any filing."). This appears to be inaccurate, as buried in his Answer to Mother's modification petition, was a single averment requesting primary. "Judges are not like pigs, hunting for truffles buried in briefs-or, for that matter, in the thousands of pages of record that accompany them." *Novak v. Novak*, 321 A.3d 924 (Pa. Super. Ct. 2024) (*citing Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F.Supp.2d 691, 694 (E.D. Pa. 2009)

9

testimony, that the prior decision was procured by perjured testimony from Mother. Under fundamental principles of due process and judicial integrity, a custody order based on fraud must be vacated and re-examined anew.

2. The trial court erred and abused its discretion by excluding from evidence Mother's criminal convictions spanning from 2014 through 2025, including guilty pleas involving domestic violence and conduct against Father. This information was directly relevant to the custody determination under 23 Pa.C.S. [Sections] 5328(a)(2) and 5329(a).

3. The court erred and abused its discretion by denying Father's subpoena to York County Children and Youth Services, which sought release of investigation report confirming that Mother assaulted the minor child A.E.M. the exclusion of this highly relevant and credible evidence severely prejudiced Father's case.

4. The trial court erred by denying Father's request to compel the production of Mother's medical records, despite having previously ordered Father to produce his own medical records. This unequal application of evidentiary standards violated Father's due process and significantly impaired the court's ability to assess Mother's fitness as a custodial parent.

5. The trial court erred and abused its discretion by refusing to order a risk assessment of Mother under 23 Pa.C.S. [Section] 5329.1, even though the record included criminal convictions and allegations of abuse that legally required such an assessment to be performed.

6. The trial court violated Father's due process rights by refusing to admit any of Father's exhibits into the trial record, thereby depriving him of the ability to present relevant evidence, rebut false allegations, and meaningfully support his claims.

7. The trial court abused its discretion by granting Father only 44 days of custody per year, despite unrebutted expert testimony establishing that shared custody would be in the best interest of the child and that prior restrictions were based on false information.

8. The trial court erred by allowing Mother's counsel to repeatedly submit false declarations and misleading statements without objection or consequences, which resulted in a fundamentally unfair proceeding and prejudiced Father's right to a fair hearing.

9. The trial court committed reversible error by failing to address or make findings on the sixteen (16) custody factors required under 23 Pa.C.S. Section 5328(a). the absence of such findings renders the July 18, 2025, custody order legally deficient.

Appellant's Concise Statement of Errors Complained of on Appeal, Pages 1-2, ¶¶ 1-9.

10

The appellate court's scope and standard of review in a custody matter is well settled in Pennsylvania:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Graves v. Graves*, 265 A.3d 688, 693 (Pa. Super. 2021).

## Issue 1

In his first issue, Father complains the Court erred by failing to vacate the prior custody order entered on December 29, 2023, even after Father presented clear and convincing evidence, through expert testimony, that the prior decision was procured by perjured testimony from Mother.[8]

The Pennsylvania Rules of Appellate Procedure states, "Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a).

In the current matter, the time to appeal Father's first issue has substantially passed the required deadline as Judge Stambaugh's order is almost two years old. Additionally, Father previously filed a timely Notice of Appeal regarding the issue of Judge Stambaugh's December 29, 2023, Order. The Superior Court of Pennsylvania issued an Order stating Father's failed to

---

8 *See* Appellant's Concise Statement of Errors Complained of on Appeal, Pages 1, ¶ 1.

11

preserve any issues and/or contained substantial defects in his brief and thus dismissed his appeal.[9] Thus, Father had an opportunity to have Judge Stambaugh's Final Order for Custody reviewed, but failed to properly preserve and/or meaningfully argue his issues.

Therefore, for the above reasons, the Court did not err by failing to vacate the prior custody order entered on December 29, 2023.

## Issue 2

Next, Father complains that the Court erred and abused its discretion by excluding from evidence Mother's criminal convictions spanning from 2014 through 2025, including guilty pleas involving domestic violence and conduct against Father, which he claims was directly relevant to the custody determination under 23 Pa.C.S. 5328(a)(2) and 5329(a).[10]

First, the Court did not exclude testimony regarding the convictions, rather the record will reflect that Father testified regarding the substance of many of the criminal matters. The Court notes that Mother's criminal matters predated the custody trial that occurred in 2023, were previously considered by the Court, and would have limited relevance to the current modification. Moreover, the Court considered these matters as part of the factor analysis set forth at the conclusion of trial. Specifically, during its custody factor analysis, the Court specifically referenced Mother's criminal convictions, including guilty pleas involving domestic violence. The included the following testimony, "Factor 2.2 violent or assaultive behavior committed by a party. Father reports multiple assaults by Mother throughout the years including

---

9 *See* Superior Court of Pennsylvania Order for 148 MDA 2024, filed on June 6, 2024.
10 *See* Appellant's Concise Statement of Errors Complained of on Appeal, Pages 1, ¶ 2.

12

**prior to the last custody trial** head injuries in 2015, throwing knives in approximately 2022, and harassments in 2021 and 2023."[11]

The Court properly declined to allow Father to read in to the record hearsay statements written or police reports authored by a police officer, who was not present to testify,[12] and specifically addresses, in Issue 6, its reasons as to why Father's exhibits were not admitted into evidence, because at no point during the trial were any of his documents properly introduced, authenticated, or admitted.[13]

## Issue 3

Father complains that the Court erred and abused its discretion by denying Father's subpoena to York County Children and Youth Services, which sought release of an investigative report confirming that Mother assaulted the minor child, A.E.M.[14]

This is the exact same information sought by Father on November 29, 2023, which was denied by Order dated December 7, 2023 (citing 23 Pa. C.S.A. § 6340(a) and 55 Pa. Code § 3490.91(a)).

Therefore, the Court did not error or abuse its discretion by denying Father's subpoena to York County Children and Youth Services, which sought release of an investigative report previously denied by a court of coordinate jurisdiction.

---

11 *Id.* at 280.
12 *Id.* at 111-15.
13 *Id.* at 282-86.
14 *See* Appellant's Concise Statement of Errors Complained of on Appeal, Pages 1, ¶ 3.

13

## Issue 4

In his fourth issue, Father complains that the Court erred by denying Father's request to compel the production of Mother's medical records, despite having previously ordered Father to produce his own medical records.[15]

During the custody trial, Father attempted to submit into evidence a report by Julia F. Arpino, MD (hereinafter "Dr. Arpino") regarding Mother's hospital visit and to subpoena her to testify.[16] The Court first heard testimony as to manner Father obtained Mother's report regarding her discharge from July 13, 2024.[17] Father stated that he came in possession of the report on August 24, 2024, through his laptop because Mother, in October 2021, personally accessed her WellSpan portal on his laptop.[18] Mother testified she did not put her WellSpan portal information into Father's laptop because she does not know her password and login information.[19] Finally, Mother testified that she never gave Father consent to access her WellSpan portal and the medical information contained therein.[20]

Then, the Court heard argument regarding WellSpan's motion to quash Father's subpoena of Dr. Arpino.[21] WellSpan argued that Father's subpoena improperly sought to compel expert witness testimony, testimony disclosing information protected under HIPPA, and testimony that would violate the physician-patient privilege.[22]

---

15 *See* Appellant's Concise Statement of Errors Complained of on Appeal, Pages 1-2, ¶ 4.
16 N.T. 7/18/25 at 6-7.
17 *Id.* at 9.
18 *Id.* at 11-12.
19 *Id.* at 15-16.
20 *Id.* at 16.
21 *Id.* at 17-19.
22 *Id.* at 17, *See* WellSpan's Motion to Quash.

14

The Court, based upon the testimony and argument from counsel and Father, granted the motion to quash for the legal basis stated by counsel for WellSpan. The Court also had serious concerns with regard to Father's likely unlawful access to Mother's protected medical information.[23]

Therefore, the Court did not err in denying Father's request to compel the production of Mother's medical records.

### Issue 5

Next, Father claims the Court erred and abused its discretion by refusing to order a risk assessment of Mother under 23 Pa.C.S. § 5329.1.[24]

It seems to the Court that Father is citing incorrect law for this issue because Section 5329.1 address consideration of child abuse and involvement with protective services and does not address physical or medical examination of a person. 23 Pa. C.S. § 5329.1. Prior to trial, Father petitioned the Court to order Mother to undergo a Risk Assessment.[25] Physical and mental examinations are governed by the Pennsylvania Rules of Civil Procedure which states:

> The court *may* order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts. The order, which shall be substantially in the form set forth in Rule 1915.18, may be made upon the court's own motion, upon the motion of a party with reasonable notice to the person to be examined, or by agreement of the parties.

Pa.R.C.P. No. 1915.8(a) (emphasis added).

Once again, Mother's pertinent convictions predated the custody trial held before Judge Stambaugh in 2023. Moreover, the Interim Order for Custody entered November 20, 2024,

---

23 N.T. 7/18/25 at 21.
24 *See* Appellant's Concise Statement of Errors Complained of on Appeal, Page 2, ¶ 5.
25 *See* Father's Petition for Risk Assessment filed May 20, 2025.

15

directed the parties to cooperate in obtaining "psychological evaluations, home studies, and other investigations, which shall be requested within fifteen (15) days of the date of this Order. If such services are not requested by a party within that time period, the party is deemed to have waived the right to obtain such services. Each party shall pay the costs of any evaluation and study which he or she requests." Order, 11/24/20.

Thus, Father could have compelled Mother to complete such an evaluation at his own cost. He failed to do so, and his untimely Petition for Risk Assessment filed May 20, 2025, was properly denied as such a request was waived as set forth in the interim order.

Therefore, the Court did not err or abuse its discretion by refusing to order a risk assessment for Mother.

### Issue 6

In his sixth issue, Father complains the Court violated his due process rights by refusing to admit his exhibits into the trial record.[26]

Throughout the custody trial, Father testified to things that may or may not have been included in his binder of unidentified and unauthenticated documents. He failed to properly present, authenticate and/or request admission of any of those documents as a trial exhibit. At the conclusion of trial, Father expected his binder of unsubstantiated documents to be entered into the record carte blanche, without any regard for the Rules of Evidence or other proper courtroom procedure. The Court explained to Father, "Just because you testify about something in general does not mean that you referenced an exhibit for admission and just because you testify about something doesn't make documents supporting it automatically admissible. You are

---

26 *See* Appellant's Concise Statement of Errors Complained of on Appeal, Page 2, ¶ 6.

16

required to identify the document, show it to counsel, and then present what is in the document."[27] Thus, Father's exhibits were not properly introduced into evidence and so they were not admitted.[28] Father chose to proceed to trial self-represented without the assistance of counsel, and it is clear that self-represented litigants are held to the same standards as counsel; Father should not be afforded any leeway for his lack of knowledge of legal process or procedure.

Therefore, the Court did not err or abuse its discretion by refusing to admit Father's binder of unidentified and unauthenticated documents into the trial record.

### Issues 7 and 9

These issues are closely related and thus the Court will address them together. Father complains that the Court abused its discretion by granting Father only 44 days of custody per year, despite unrebutted expert testimony establishing that shared custody would be in the best interest of the child and that prior restrictions were based on false testimony.[29] Additionally, Father complains the Court committed reversible error by failing to address or make finding on the 16 custody factors required under 23 Pa.C.S. Section 5328(a). and the absence of such findings renders the July 18, 2025, custody order legally deficient.[30]

Pennsylvania law requires that, "[i]n ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors[.]." Moreover, "a 'court *may* award any of' seven delineated 'types of custody if it is in the best interest of the child' after 'considering the factors set forth in [S]ection 5328 (relating to factors to consider

---

27 N.T. 7/18/25 at 277-78.
28 *Id.* at 278.
29 *See* Appellant's Concise Statement of Errors Complained of on Appeal, Page 2, ¶ 7.
30 *Id.* at ¶ 9.

17

when awarding custody)[.]'" *Graves v. Graves,* 265 A.3d 688, 694 (Pa. Super. 2021)(*emphasis added*). **"The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors."** *Id.* at 700 (*citing M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013) (*citations omitted*) (emphasis added)). **"[T]here is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations."** *Id.*

In custody matters, the controlling question and paramount concern is the best interests of the child, and all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being. *See McMillen v. McMillen,* 602 A.2d 845, 847 (Pa. 1992). Issues of credibility and weight of the evidence, absent an abuse of discretion, are to be decided by the trial court. *See N.H.M. v. P.U.T.,* 947 A.2d 1268, 1272 (Pa. Super. 2008).

Pursuant to Section 5328(a) (Factors to consider when awarding custody) of Pennsylvania's Child Custody Act:

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:
> (1) Which party is more likely to ensure the safety of the child.
> (2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> (2.2) Violent or assaultive behavior committed by a party.
> (2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.
> (3) The parental duties performed by each party on behalf of the child.
> (4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child

18

or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. §5328(a).

A trial court must utilize those factors to determine what type of physical and legal custody to award. After consideration of those factors outlined above, the court may consider which form of custody pursuant to 23 Pa.C.S. § 5323 to award the parties, if any. It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *See M.J.M.,* 63 A.3d at 339.

The trial court clearly went through the custody factors (a total of 16 were in effect at the time of trial) at the conclusion of the trial and stated its findings on the record in the presence of

19

the parties and counsel.[31] The Court also incorporated by reference the prior custody trial held by Judge Stambaugh, as well as Judge Stambaugh's findings of fact, given that it was made clear to the parties that this was a modification of that custody order, **not a "second bite at the apple" to relitigate evidence previously introduced during a full blown custody trial held a little over a year and a half prior (December 2023).**[32]

Based upon its factor analysis, the Court found it appropriate to grant Father's request to lift his supervision requirements, such that he would exercise partial physical custody of the children on alternating weekends.[33] The Court found credible the testimony of his experts that Father "completed the evaluations that were directed by Judge Stambaugh sufficiently to indicate that [he] does not pose an emotional or psychological risk of harm," which was bolstered by the preference of the children to resume a custodial relationship with him.[34] Notably, at the time of the trial and for two years prior, Father had exercised very little supervised visitation with the children, given the associated cost.[35] However, all three children were interviewed and expressed a desire to return to having regular visits with their Father, and all confirmed that they felt safe with him.[36]

Therefore, the Court did not abuse its discretion or commit a reversible error by denying Mother's modification petition and maintaining status quo, with the exception of granting Father's request to lift supervised visitation.

---

31 N.T. 7/18/25 at 279-84.
32 *Id.* at 132-33, .
33 *Id.* at 285.
34 Id. at 292.
35 Id. at 262-64.
36 *Id.* at 285-86. At the time of trial, the children were aged 12, 13, and 14.

20

## Issue 8

Father claims, in his eighth issue, that the Court erred by allowing Mother's counsel, Attorney Holt, to repeatedly submit false declarations and misleading statements without objection or consequence.[37] As discussed in Issue 1, it is clear that Father was and remains unhappy with the outcome of the parties' initial custody trial.[38] Absent specific reference to statements made, objections lodged, or rulings thereupon claimed to be in error, the Court does not believe any further discussion is warranted regarding this issue.

## Conclusion

Based upon the foregoing reasons, this Court submits that it did not err or abuse its discretion.

BY THE COURT,

DATED: September 16, 2025

KELLEY L. MARGETAS, JUDGE

---

37 *See* Appellant's Concise Statement of Errors Complained of on Appeal, Page 2, ¶ 8
38 N.T. 7/18/25 at 151, 154-55.

21

# OFFICE OF THE PROTHONOTARY
Of York County

**Diane M. Platts**
Prothonotary
**Billie Jo Bones**
Deputy Prothonotary
**Gregory E. Gettle**
Solicitor



York County Courthouse
45 North George Street
York, Pennsylvania 17401
Telephone (717) 771-9611

# NOTICE FORM

Notice Given to:

Craig Moss

(Name of recipient)


(Name of recipient)


_____
(Name of recipient)

Via

**HAND DELIVERY**
(Method of communication)

Case# & Description

1925(a)  2015-FC-335-03

On

Sept. 17th, 2025
(Date)


DGN
(Clerk initials)

**Garibay-Navarro, Dayanna**

| | |
|---|---|
| **From:** | Prothonotary Email Account |
| **Sent:** | Wednesday, September 17, 2025 9:05 AM |
| **To:** | 7178431993@concordsend.com |
| **Subject:** | 2015-FC-000335-03 |
| **Attachments:** | 2025-09-17 (4).pdf |

21 PAGES
FARLEY G HOLT ESQ

*Notice of Entry of Order in accordance with PA R. C. P. 236.*

*If you have a question for the Prothonotary's Office, call 717-771-9611. Thank you.*

*Please do not reply to this e-mail; this inbox is not monitored.*

*Confidentiality Notice: This e-mail, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender at the phone number listed above and destroy all copies of the original message.*